(603 P.2d 1025)

No. 50,177
No. 50,178
No. 50,179

WILLIAM J. RAMSEY d/b/a KINSLEY AUTOMOTIVE; THE KINSLEY COOPERATIVE EXCHANGE; and L. W. WOOD d/b/a BILL'S STANDARD SERVICE, *Appellees,* v. OLLIE B. ADAMS, *Appellant.*

Opinion filed December 14, 1979.

*Richard M. Klinge,* of Kaplan, McMillan and Klinge, of Wichita, for the appellant.

*Rae E. Batt,* of Kinsley, for the appellees.

Before FOTH, C.J., PARKS and MEYER, JJ.

PARKS, J.: Defendant Ollie Adams appeals from a judgment of the trial court holding him personally liable for debts incurred in the name of Sprink-Co., Inc., a Kansas corporation of which he is the sole stockholder. Sprink-Co. is engaged in selling and servicing large irrigation systems in western Kansas. Plaintiffs are three

Kinsley merchants who sold goods and merchandise to Sprink-Co. on open accounts.

The corporation had long dealt with plaintiffs and had often purchased goods used to service its customers' irrigation systems. Terry Schaller, manager of the Kinsley office of the corporation, and other employees of Sprink-Co. ordered the goods. Invoices were sent to Sprink-Co. and payments were made on corporate checks. Plaintiffs had no direct dealing with Adams and two of them, although knowing who he was, did not know him personally. Some of the merchandise which plaintiffs sold to Sprink-Co. was used on a tract of land near Kinsley personally owned by Adams and his wife.

The parties stipulated that there was an agreement, unknown to the plaintiffs, between Adams and Sprink-Co. that any goods and services furnished to Adams' land and billed to Sprink-Co. were in turn billed to Adams, who would reimburse Sprink-Co. at its Garden City office. The parties also stipulated to the entire amount due on each account from Sprink-Co. to plaintiffs. Although the corporation admitted complete liability and that it would confess judgment to the debt, the plaintiffs sued Adams personally to collect the entire bill, including merchandise and services other than those furnished to Adams' property.

The trial court found that in selling merchandise to Sprink-Co., the plaintiffs relied on and had a right to rely on the personal credit of Ollie Adams. We are required to determine whether there is substantial competent evidence to support this finding. *Gangel v. Benson,* 215 Kan. 118, 123, 523 P.2d 330 (1974).

A corporation and its stockholders are presumed separate and distinct, whether the corporation has many stockholders or only one. Debts of a corporation are not the individual indebtedness of its stockholders. *Amoco Chemicals Corporation v. Bach,* 222 Kan. 589, 593, 567 P.2d 1337 (1977). There are few exceptions to this rule, but a creditor may collect a corporate debt from the sole shareholder if (1) the debt has been personally guaranteed by the shareholder; (2) the corporation is completely bogus (see *Sell v. United States,* 336 F.2d 467 [10th Cir. 1964]); or (3) the corporation is merely the alter ego of the sole stockholder (*Kilpatrick Bros., Inc. v. Poynter,* 205 Kan. 787, 473 P.2d 33 [1970]). Clearly, the trial court did not rely upon the second exception cited above, since it held that the corporation was "good." Additionally, the

parties themselves stipulated that the corporation was validly organized. It therefore remains for this court to determine whether there was substantial competent evidence for the trial court to hold Adams personally liable for debts of Sprink-Co. either because he personally guaranteed the debts or because the corporation was the alter ego of Adams.

As a factual matter, there is no evidence to show that plaintiffs relied on Adams' personal guarantee. All of plaintiffs' contacts were with the corporation through its office manager, Mr. Schaller. Only one plaintiff knew Adams personally, and he testified that the purchases were made by the employees of the corporation, not Adams. The corporation was billed for all purchases and payments were accepted on corporate checks. The open accounts in the name of Sprink-Co., Inc., had been established by plaintiffs and credit extended to the corporation before Adams purchased the controlling interest in the corporation. The only evidence which even suggests that Adams could have personally guaranteed the debts was that he signed a promissory note to one of the plaintiffs covering the entire debt incurred by Sprink-Co. from that business. This note was not the basis of the suit and was signed several months *after* the plaintiffs made demand upon the corporation for payment. Additionally, Adams testified that he signed the note, which listed the debtor as "O. B. Adams dba Sprink Co. Inc.," in his corporate capacity.

The only remaining ground upon which the trial court could have held the majority stockholder liable for corporate debts is that the corporation was merely the alter ego of Adams. The corporate veil will be pierced reluctantly and cautiously (*Amoco Chemicals Corporation v. Bach,* 222 Kan. at 593. When equity demands, however, the presumed separateness of the corporation from its owners may be disregarded and the shareholders held liable on corporate debts. *Kilpatrick,* 205 Kan. at 796. The corporate entity will be disregarded as the alter ego of the majority shareholder when the corporation is a mere instrumentality for carrying out the business affairs of the shareholder and when to permit separation of the corporate entity would allow fraud or injustice. *Kilpatrick,* 205 Kan. at 797.

Eight factors were recently adopted as significant in the decision to disregard the corporate entity: (1) undercapitalization of a one-man corporation, (2) failure to observe corporate formalities,

(3) nonpayment of dividends, (4) siphoning of corporate funds by the dominant stockholder, (5) nonfunctioning of other officers or directors, (6) absence of corporate records, (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders, and (8) the use of the corporate entity in promoting injustice or fraud. *Amoco Chemicals Corporation v. Bach,* 222 Kan. at 594. These factors are guidelines and not a conclusive test. *Service Iron Foundry, Inc. v. M. A. Bell Co.,* 2 Kan. App. 2d 662, 673-74, 588 P.2d 463 (1978).

Plaintiffs presented no evidence to establish the first six factors, *i.e.,* that this corporation was undercapitalized, that corporate formalities were ignored, dividends unpaid, corporate funds siphoned off, records unkept, or that directors or officers other than Adams were inactive.

As to the seventh, the only evidence which would tend to show Adams used the corporation to further his personal business interests was the fact that some of the goods purchased by Sprink-Co. were used on Adams' land. However, much of the merchandise was purchased from all three plaintiffs for the benefit of many other customers, and bills were received and paid by Sprink-Co. for those purchases as well. There is nothing to prevent a sole stockholder from employing the services of his corporation as a private customer. Adams agreed to reimburse the corporation for sums expended on this land and repayment of that debt was a matter between the corporation and its customer.

Finally, no fraud upon the plaintiffs was evidenced. The fact that these plaintiffs customarily disregard the corporate status of a business and look at its stockholders in deciding whether credit should be extended, is of no importance in determining whether the corporation or stockholders misrepresented their status to commit fraud upon the creditor.

In short, there is no evidence of any of the eight factors commonly relied on by courts to justify piercing the corporate veil.

The finding of the trial court that defendant, Ollie Adams, is personally liable for the debts of the corporation, Sprink-Co., Inc., is unsupported by substantial competent evidence, and must be set aside.

Judgment reversed.