## APPELLATE DIVISION

ECONOMIC DEVELOPMENT LOAN FUND, )
                                )
         Plaintiff/Appellee, )
                                )
          vs.           )
                                )
LEO S. PANGELINAN, et. al., )
                                )
        Defendants/Appellants. )
————————————————————— )

DCA NO. 84-9009

CTC NO. 81-388

**F I L E D** OPINION
Clerk
District Court

**JAN 3 0 1986**

For The Northern Mariana Islands

By —————————————
(Deputy Clerk)

Attorney for Appellee/Appellant,
Economic Development Loan Fund:

    Jesus C. Borja
    Attorney-at-Law
    Torres Building
    San Jose Village
    Saipan, CM 96950

Attorney for Appellant, Leo S.
Pangelinan:

    Michael A. White
    White and Novo-Gradac
    P. O. Box 222 CHRB
    Saipan, CM 96950

Attorney for Appellee, John S.
Pangelinan:

    Randall T. Fennell
    Attorney-at-Law
    Pangelinan Building
    Susupe Village
    Saipan, CM 96950

BEFORE: LAURETA, DUENAS and WATERS*, District Judges

LAURETA, District Judge:

—————————————

*The Honorable Laughlin E. Waters, United States District Court,
Central District of California, sitting by designation.

AO 72
(Rev.8/82)

The Economic Development Loan Fund Board (EDLF) brought suit to foreclose on two lots pledged as security for a loan to Pangelinan Family, Ltd. (Pangelinan Ltd.) and in addition to hold John S., Susan R. and Leo S. Pangelinan personally liable for the corporate debts of Pangelinan Ltd. The trial court held that Leo S. Pangelinan was the alter ego of Pangelinan Ltd. and therefore, personally liable for its debts. As a result the court ruled EDLF could foreclose on the lots pledged as security. The court found that John S. Pangelinan and Susan R. Pangelinan were not personally liable for the corporate debts of Pangelinan Ltd.

We now affirm those portions of the judgment holding Leo S. Pangelinan personally liable for the corporate debts of Pangelinan Ltd. and holding John S. Pangelinan not personally liable for these same debts. We reverse that portion of the judgment holding the untranslated notice of default effective and remand this case to the Commonwealth Trial Court for a judgment consistent with this opinion.

I.

FACTS

Pangelinan Ltd. was incorporated under the laws of the Commonwealth on May 22, 1979. John S., Leo S. and Susan R. Pangelinan were listed as the initial incorporators, officers and directors. All of the initial stocks were also issued in their names.

2
3/82)

454

The corporation conducted little or no business during its first year. Pangelinan Ltd. submitted a loan application to EDLF on January 23, 1980. The money, $115,000, was to be used by Tropicana U-Drive (Tropicana), a division of Pangelinan Ltd., to purchase new cars which Tropicana intended to commercially lease under an exclusive arrangement with the Saipan Grand Hotel. The loan application was signed by John S. Pangelinan as president of Pangelinan Ltd.

EDLF granted Pangelinan Ltd. a loan for $99,000. The loan agreement was signed on June 18, 1980, by John S. Pangelinan, president; Leo S. Pangelinan, vice-president; and Susan R. Pangelinan, secretary/treasurer. Paragraph 6 and attachment A of the loan agreement refer to two lots, 003 H 46 and 47, which were purportedly pledged as security for the loan. At all relevant times Leo S. Pangelinan owned lots 003 H 46 and 47. He signed the mortgage agreement which apparently encumbered these lots as the vice-president of Pangelinan Ltd. Less than two months later, on August 30, 1980, John S. Pangelinan resigned as an officer and a director of Pangelinan Ltd., sold his stock back to the company and ceased all involvement with Pangelinan Ltd.

After John left Leo assumed full control of the operations of Pangelinan Ltd. He regularly used corporate funds to satisfy personal obligations and personal assets, namely lots 46 and 47, to secure corporate funds. At no time were regular meetings of stockholders or directors held. Records were non-

AO 72
(Rev 8/82)

existent in most instances and where records were kept they were inadequate.

Pangelinan Ltd. fell behind in its loan payments to EDLF. EDLF sent a notice of default, drafted only in English, on September 21, 1981. In this action, filed November 25, 1981, EDLF sought to foreclose on lots 003 H 46 and 47. Additionally, they requested that the court pierce the corporate veil and hold Leo S., John S. and Susan R. Pangelinan personally liable for the debts of Pangelinan Ltd..

Initially, the trial court found that though Pangelinan Ltd. had defaulted on the loan EDLF would be precluded from foreclosing on the loan because the mortgage note was signed by the corporation and it did not hold title to the land. Ultimately, however, the court found that Leo S. Pangelinan was the alter ego of Pangelinan Ltd. and personally liable for the corporate debts allowing EDLF to foreclose on lots 003 H 46 and 47 in spite of the fact that no translated notice of default was ever sent. The court also held that neither John S. nor Susan R. Pangelinan were personally liable for the corporate debts of Pangelinan Ltd.

## II.

### ISSUES

1. WHETHER THE EVIDENCE SUPPORTS THE TRIAL COURT'S FINDING THAT LEO S. PANGELINAN WAS THE ALTER EGO OF PANGELINAN LTD. AND THEREFORE, PERSONALLY LIABLE FOR THE CORPORATE DEBTS.

2. WHETHER THE EVIDENCE SUPPORTS THE TRIAL

456

COURT'S FINDING THAT JOHN S. PANGELINAN WAS NOT THE ALTER EGO OF PANGELINAN LTD. AND THEREFORE, NOT PERSONALLY LIABLE FOR THE CORPORATE DEBTS.

3. WHETHER § 4534 REQUIRING THAT ALL NOTICES OF DEFAULT BE TRANSLATED INTO CHAMORRO OR CAROLINIAN CAN BE AVOIDED WHEN THE COURT DETERMINES THE MORTGAGOR COMPREHENDS THE NOTICE IN ENGLISH ALONE.

## III.

### DISCUSSION

1. Standard of Review.

When reviewing the findings of fact of the trial court the appellate court uses the clearly erroneous standard. Schenk v. Government of Guam, 609 F.2d 387, 390 (9th Cir. 1979). A finding is clearly erroneous when the entire record produces the definite and firm conviction that the court below committed a mistake. The appellate court accords particular weight to the trial judge's assessment of conflicting and ambiguous evidence. South Seas Corp. v. Sablan, 525 F.Supp. 1033 (D.N.M.I. 1981); aff'd. mem., 691 F.2d 508 (9th Cir. 1982). On the other hand, conclusions of law made by the trial court are freely reviewable and are not binding upon a court of review. Official Creditors' Committee of Fox Markets, Inc. v. Ely, 337 F.2d 461 (9th Cir. 1964); cert. denied, 380 U.S. 978, 85 S.Ct. 1342, 14 L.Ed.2d 272 (1965).

2. Piercing the Corporate Veil.

The general rule is that a corporation and its share-holders are separate entities and consequently, shareholders are

AO 72
(Rev 8/82)

457

not liable to third persons for corporate debts beyond their investment in stock of the corporation. Ramsey v. Adams, 4 Kan.App.2d 184, 603 P.2d 1025 (1979). However, in some cases, where the protection of the separate corporate entity has been abused by the stockholders courts have adopted the equitable doctrine of alter ego. This doctrine exists for those instances where the stockholders no longer treat the corporation as a separate entity but instead as an instrument to conduct their own personal business. Though courts differ as to when the corporate veil should be pierced the common significant factors are: undercapitalization, failure to observe corporate formalities, nonpayment of dividends, siphoning of corporate funds by dominant stockholders, nonfunctioning of other officers or directors, absence of corporate records, use of the corporation as a facade for the operations of the dominant stockholders, and use of the corporate entity in promoting injustice or fraud. Fletcher Cyc. Corp., § 41.10 et. seq. (Permanent Edition Rev. 1983).

The test that has been adopted by most courts in determining whether to pierce the corporate veil is a two prong test:

> 1. Whether the interests of the dominant stockholders are so intertwined with those of the corporation that separate entities no longer exist, and
>
> 2. Whether injustice or fraud would result if the fiction of separate entities was upheld. Id.

A.  Leo S. Pangelinan.

Corporate formalities were not observed by Pangelinan Ltd. No regular shareholders meetings were held. Leo S. Pangelinan used corporate funds to pay personal debts and used personal funds to secure corporate debts (e.g., the mortgage on lots 003 H 46 and 47). Records were not kept in most instances and where they were kept they were inadequate. Though Leo testified he repaid all the "loans" from the corporation his testimony was not supported by any evidence produced at trial. The facts indicated that Leo S. Pangelinan was using Pangelinan Ltd. to further his personal interests.

Leo S. Pangelinan argues that even if this court were to decide that his interests were so interwined with those of Pangelinan Ltd. that a separate corporate entity no longer existed, the court is precluded from finding that he is the alter ego of Pangelinan Ltd. without a showing of fraud or injustice. To do this, he argues, EDLF must show that the assets of Pangelinan Ltd. are insufficient to satisfy the balance on the loan from EDLF.

The facts indicate there has been an injustice here. Pangelinan Ltd. has received what amounts to be an unsecured loan for $99,000 from EDLF. Leo S. Pangelinan has used money from this loan to satisfy personal debts and obligations. The corporation either cannot or will not repay the loan. Pangelinan Ltd. has benefitted at the expense of EDLF, and Pangelinan Ltd. is now "defunct."

AO 72
(Rev.8/82)

459

he alter ego doctrine is an equitable one. Fletcher Cyc. Corp., § 41.25. The court is called upon to balance the equities. The scale clearly tips in favor of EDLF in this case. By piercing the corporate veil Leo S. Pangelinan will become personally liable for the debts of Pangelinan Ltd. and be forced to repay the loan. He treated Pangelinan Ltd. as his personal business while he operated it and now he is being called upon to answer for the debts of that venture. If, as Leo says, the corporate assets can cover the outstanding balance to EDLF then Leo will only have to liquidate those assets and turn over the money. If not, he will be forced to use some of his personal assets to satisfy this debt, but this is nothing more than this court would ask from a sole proprietor and that is exactly the way Leo Pangelinan operated Pangelinan Ltd.

B.  John S. Pangelinan.

John S. Pangelinan resigned as officer and director of Pangelinan Ltd. on August 13, 1980, less than two months after the EDLF loan agreement was signed. The notice of default was sent on September 23, 1983. There is no evidence that there was any failure on the part of Pangelinan Ltd. to live up to the terms of the loan agreement prior to the resignation of John S. Pangelinan. EDLF produced no evidence that John S. Pangelinan ever used corporate funds for personal matters. Nor did EDLF produce evidence that John S. Pangelinan authorized the use of corporate funds for other than corporate purposes.

The alter ego doctrine is an equitable one. With

regards to EDLF's case against John S. Pangelinan the equities are in favor of John S. Pangelinan.

3. Strict Compliance with § 4534.

■ If the language of a statute is plain "the sole function of the courts is to enforce it according to its terms." Caminetti v. United States, 242 U.S. 470, 485; 37 S.Ct. 192, 485; 61 L.Ed. 442, 453 (1916).

Chapter 5 of the Commonwealth code dealing with real estate mortgage law contains § 4534 entitled "Notice of Default" which states in pertinent part:

> Not less than 30 days prior to the commencement of any action or proceeding seeking foreclosure of a mortgage, written notice of default shall be served as provided in Section 4524. The notice shall be written in the English language and in either Chamorro or Carolinian and shall contain the following: ... (emphasis added.)

Notice of default was sent by EDLF in English only. The trial court found that the Pangelinans were well versed in English and that § 4534 was intended to protect individuals who were not well versed in English. The court concluded that failure to strictly comply with the translation requirement did not invalidate the notice of default.

On appeal Leo S. Pangelinan argues that the trial court erred in concluding that strict compliance with § 4534 was unnecessary in this case. EDLF answers this argument by repeating the logical conclusion of the trial court, namely, defendants understood English and therefore there was no need to translate

461

this notice.

Section 4534 states that notice of default shall be sent in English and Chamorro or Carolinian. The language is plain. The court is not being called upon to interpret a statute it is being asked to enforce a statute that by its very terms requires a translated notice of default prior to the commencement of a suit for foreclosure.

Additionally, EDLF contends that since the purpose of this chapter has been satisfied strict compliance should not be required. Section 4511 outlines the purpose of Chapter 5:

> The purpose of this Chapter is to establish a system of mortgage law in the Commonwealth which will induce lenders to make secured commercial and residential loans, while at the same time insuring that residents of the Commonwealth who execute mortgages will have a full comprehension of the nature and consequences of their act. All provisions of this Chapter shall be construed in such a manner as to best effectuate its purposes.

There was sufficient evidence for this court to find that defendants understood the notice of default. The purpose of Chapter 5 was satisfied; EDLF lent Pangelinan Ltd. money and Pangelinan Ltd. had full comprehension of the nature and consequences of its act. But the language of § 4534 was ignored by EDLF, a commonwealth agency.

EDLF also argues that to require a translated notice of default in this case would give credence to the lesser of two possible "interpretations" of this statute. Once again it should be pointed out that when the language of a statute is plain and

the meaning is clear the court does not interpret the statute, it enforces it. Caminetti, 242 U.S. at 485.

The language translation requirement is a legitimate one. Many of the local inhabitants of the Commonwealth are not fluent in English and the legislature decided it was essential that they be protected. The language of the statute imposes a translation requirement for all notices of default. The language of § 4534 is mandatory and we find no reason to second-guess the legislature. The untranslated notice of default is unenforceable and therefore we reverse that portion of the judgment holding that it was effective.

For these reasons we affirm those portions of the judgment holding Leo S. Pangelinan personally liable for the debts of Pangelinan Ltd. and holding John S. Pangelinan not liable for the debts of Pangelinan Ltd. We reverse that portion of the judgment holding the untranslated notice of default effective and remand the case to the trial court for a judgment consistent with this opinion.

AFFIRMED in part; REVERSED in part; and REMANDED.

JUDGE ALFRED LAURETA

JUDGE CRISTOBAL C. DUENAS

JUDGE LAUGHLIN E. WATERS

AO 72
(Rev.8/82)

463