**SALT LAKE CITY CORPORATION,**
Plaintiff and Appellant,

v.

**JAMES CONSTRUCTORS, INC.,** Hood Corporation, and Industrial Indemnity Company, Defendants and Respondents.

**No. 870387–CA.**

Court of Appeals of Utah.

Sept. 7, 1988.

Wilford A. Beesley (argued), Stanford P. Fitts, Beesley, Spencer & Fairclough, Salt Lake City, for plaintiff and appellant.

David A. Reeve (argued), Armstrong, Rawlings & West, Salt Lake City, for defendant and respondent, Hood Corp.

C. Reed Brown, Hintze & Brown, Salt Lake City, for defendants and respondents, James Constructors and Indus. Indem. Co.

**OPINION**

Before BENCH, GARFF and ORME, JJ.

ORME, Judge:

Appellant Salt Lake City Corporation ("SLCC") brought an action against James Constructors, Inc.; James's parent, Hood Corporation; and James's surety, Industrial Indemnity Company. SLCC sought to recover the cost of repairing and completing work done pursuant to a public construction contract. Hood moved for summary judgment. Judgment was granted dismissing Hood from the action. Approximately sixteen months later, SLCC moved to have the district court reconsider its judgment. The court refused. SLCC contends there was error in the court's refusal to reconsider and, even if there was not, that the court erred in granting summary judgment in the first instance. We are persuaded by the latter argument and reverse.

## FACTUAL BACKGROUND

This dispute arose from a contract for the installation of a water pipeline to service Salt Lake City. Prior to awarding the contract to James, the apparent low bidder, SLCC asked it to provide financial information and technical data to substantiate its ability to complete the project. James responded by supplying a consolidated financial statement of its parent company, Hood Corporation, and its affiliated entities. Hood owns 100% of James's stock. Hood acquired James a few years prior to the contract date and installed James Foreman, one of its employees, as its president.[1] SLCC required James to provide a performance bond for $1.13 million, the amount of the contract. Hood approved the performance bond, which was furnished by Industrial Indemnity Company.

SLCC and James formally entered into the contract on July 8, 1983. After the installation of some pipe, the backfill in the trench collapsed and the pipe and other underground utilities were damaged. SLCC notified James of the defective work, ordered it off the job, and withheld payment of some monthly invoices for work already performed. On May 15, 1984, James filed a complaint against SLCC alleging breach of contract and that the damage to the pipeline was SLCC's responsibility. SLCC subsequently filed a separate action against James, Hood, and Industrial Indemnity to recover the cost of repairing the damage and completing the project. The court consolidated the two actions and discovery proceeded for about a year. During this time, SLCC was represented by the Salt Lake City Attorney's office.

Hood filed a motion for summary judgment in June of 1985. The motion was supported by a memorandum of points and authorities and an affidavit of Hood's president, Marc Laulhere. Hood's principal contention was that James was an independent corporation and that it was not liable for James's debts. SLCC responded by filing, one day before the scheduled hearing, a reply affidavit of its attorney, Arthur Keesler. The "affidavit" was really more of a legal memorandum, citing cases and quoting passages from Laulhere's unfiled deposition. SLCC simultaneously filed a motion for leave to amend its complaint. SLCC raised explicitly for the first time the theory that James was the "alter ego" of Hood.

The district court concluded that, even under the amended complaint and even as to its alter ego theory, SLCC had failed to demonstrate any issues of material fact in support of its claim against Hood. It granted Hood's motion on August 21, 1985, dismissing all causes of action by SLCC against Hood. Following the district court's order, discovery continued as among the remaining parties and several more depositions were taken. The following March, SLCC employed its present counsel.

In December 1986, approximately sixteen months after the summary judgment was granted, SLCC filed a motion for reconsideration of the judgment and for leave to amend its complaint. These motions were supported by a memorandum that quoted from depositions which, for the most part,

---

1. Hood apparently continued to pay Foreman's salary.

had apparently still not been filed.[2] SLCC argued that its original complaint had not adequately pleaded the alter ego claim and that it should be allowed to amend its complaint to correct the deficiencies.

The district court denied both motions. The court specified that, although it had authority to reconsider its prior judgment, due to the passage of time it would be prejudicial to Hood to allow SLCC to have another opportunity to argue its alter ego theory, which had already been considered and decided against SLCC. The district court then certified its prior judgment as final pursuant to Utah R.Civ.P. 54(b). This appeal followed.

SLCC raises two principal issues on appeal.[3] First, SLCC contends the grant of summary judgment was erroneous because there were disputed material facts relevant to whether James was the alter ego of Hood. Second, SLCC argues that the district court erred by not reconsidering its judgment and allowing SLCC to amend its complaint. We first address the reconsideration issue.

## RECONSIDERATION AND LAW OF THE CASE

SLCC argues that the trial court erred in its refusal to reconsider its earlier grant of summary judgment. A motion to reconsider is not expressly available under the Utah Rules of Civil Procedure.[4] *McKee v. Williams*, 741 P.2d 978, 980 (Utah Ct.App. 1987). *See Peay v. Peay*, 607 P.2d 841, 843 (Utah 1980). However, by implication Rule 54(b) of the Utah Rules of Civil Procedure does allow for the possibility of a judge changing his or her mind in cases involving multiple parties or multiple claims.[5]

**2.** The date at which these depositions were filed with the district court is not clear from the record. One appears to have been filed on December 3, 1986. Two others may not have been filed until August 1987.

**3.** A third issue was also raised. In declining to reconsider its grant of summary judgment, the district court opined that since SLCC was a governmental entity, its attorneys should be held to a higher standard of performance. SLCC challenges the existence of such a heightened standard. We need not reach this issue since this appeal can be decided on settled legal principles. We note, however, that Hood has cited no authority supporting the "higher standard" proposition.

**4.** The rationale was reiterated in *Peay v. Peay*, 607 P.2d 841, 843 (Utah 1980). "[I]f the party ruled against were permitted to go beyond the rules" and obtain a different ruling upon reconsideration, "why should not the other party who is now ruled against be permitted to make a motion for *re*-re-consideration...?" *Id.* (quoting *Drury v. Lunceford*, 18 Utah 2d 74, 415 P.2d 662, 663 (1966)). "[P]ractical expediency demands that there be some finality to the actions of the court...." *Id.*

**5.** Utah R.Civ.P. 54(b) states, with our emphasis added:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, crossclaim, or third-party claim, and/or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination by the court that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, *and the order or other form of decision is subject to revision at any time before the entry of judgment* adjudicating all the claims and the rights and liabilities of all the parties.

There are good reasons for institutionalizing more leeway for reconsideration in the multiple-party or multiple-claim case. When an entire case has been argued and decided, the judge has presumably heard all there is to hear and the parties have presumably offered all appropriate guidance. Once the judge has decided, the system assumes he or she has decided correctly and would decide the same way again. Reconsideration requests in that situation are frowned on. The occasional reversal on appeal is a price the system is pleased to bear in exchange for being free of the burden of reconsideration in the vast majority of cases where the correct result was reached and would be reached again on reconsideration, re-reconsideration, and reconsideration of the re-reconsideration.

Rule 54(b) recognizes that in complex cases it is often efficient to decide parts of the dispute seriatim. However, a disposition of one of many claims or as to one of many parties—which made sense when it was looked at in isolation—may make less sense when other pieces of the puzzle are subsequently examined. Rule 54(b) allows courts to readjust prior rulings in complex cases as subsequent develop-

Although "[a]ny judge is free to change his or her mind on the outcome of a case until a decision is formally rendered," *Bennion v. Hansen*, 699 P.2d 757, 760 (Utah 1985), the "law of the case" doctrine is employed to avoid delay and to prevent injustice. "The purpose of [this] doctrine is that in the interest of economy of time and efficiency of procedure, it is desirable to avoid the delays and the difficulties involved in repetitious contentions and rulings upon the same propositions in the same case." *Richardson v. Grand Central Corp.*, 572 P.2d 395, 397 (Utah 1977). *See Conder v. A.L. Williams & Assocs., Inc.*, 739 P.2d 634, 636 (Utah Ct.App.1987). "Although a trial court is not inexorably bound by its own precedents, prior relevant rulings made in the same case are generally to be followed." *People ex. rel. Gallagher v. District Court*, 666 P.2d 550, 553 (Colo.1983).

■ The law of the case doctrine is particularly applicable when, in the case of summary judgment, a subsequent motion fails to present the case in a different light, such as when no new, material evidence is introduced. *Sittner v. Big Horn Tar Sands & Oil, Inc.*, 692 P.2d 735, 736 (Utah 1984); *Richardson v. Grand Central Corp.*, 572 P.2d at 397; *Hammer v. Gibbons & Reed Co.*, 29 Utah 2d 415, 510 P.2d 1104, 1105 (Utah 1973).

■ Such is the case here. Approximately sixteen months had passed between the initial grant of summary judgment and the motion to reconsider. SLCC did not present any legal theories that had not already been considered and, as it candidly admits on appeal, although some facts were elaborated on, it presented no new, material facts that were not before the court at the time of the original decision to grant the judgment. We see no error in the court's refusal to reconsider and turn to examine whether the court correctly

granted summary judgment in the first instance.

## MOTION FOR SUMMARY JUDGMENT

SLCC's principal contention is that the district court's judgment was in error because genuine issues of material fact existed concerning whether James was the "alter ego" of Hood.

Summary judgment is appropriate if the pleadings, depositions, affidavits, and admissions submitted in a case show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Utah R.Civ. P. 56(c). "In considering a summary judgment motion, the court must evaluate all the evidence and all reasonable inferences fairly drawn from the evidence in a light most favorable to the party opposing summary judgment." *Conder v. A.L. Williams & Assocs., Inc.*, 739 P.2d 634, 637 (Utah Ct.App.1987). Judgment should only be granted when it appears "there is no reasonable probability that the party moved against could prevail." *Frisbee v. K & K Const. Co.*, 676 P.2d 387, 389 (Utah 1984).

■ Hood's motion was supported by an affidavit of Hood's president, Marc Laulhere, and a legal memorandum. The affidavit, while somewhat conclusory, would surely have supported the grant of summary judgment if not objected to and not rebutted. SLCC filed an opposing affidavit, but, as previously noted, this "reply affidavit" was an affidavit of SLCC's counsel, Mr. Keesler, who lacked personal knowledge of the underlying facts. The affidavit quoted from Laulhere's deposition, which had not been filed with or "published" by the court,[6] and also cited and discussed various legal authorities.

---

ments in the case might suggest, unless those rulings disposed of entire claims or parties *and* those rulings were specifically certified as final. The "law of the case" doctrine nonetheless promotes a measure of predictability in such cases by creating a kind of presumption that the court's prior rulings, even if not certified as

final under Rule 54(b), were correct and should stand.

**6.** Utah R.Civ.P. 32(d) now makes "publication" unnecessary. *See Conder v. A.L. Williams & Assocs., Inc.*, 739 P.2d 634, 641 (Utah Ct.App. 1987) (Orme, J., concurring).

Affidavits in support of or in opposition to motions for summary judgment must be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein. Utah R.Civ.P. 56(e). *See Treloggan v. Treloggan,* 699 P.2d 747, 748 (Utah 1985). Hood's objection to the "reply affidavit" is well-taken. Mr. Keesler's affidavit quite clearly fails to meet the requirements of Rule 56(e).[7]

■ However, Hood objects to the sufficiency of the "reply affidavit" for the first time on this appeal. "[I]t is axiomatic that matters not presented to the trial court may not be raised for the first time on appeal." *Franklin Fin. v. New Empire Dev. Co.,* 659 P.2d 1040, 1044 (Utah 1983). *See Zions First Nat'l Bank v. National Am. Title Ins. Co.,* 749 P.2d 651, 654 (Utah 1988) (rule applies even where facts are not disputed and issue raised is one of law). By failing in timely fashion to object to the affidavit or move to strike it, Hood has waived the right to challenge its defects. *Hobelman Motors, Inc. v. Allred,* 685 P.2d 544, 546 (Utah 1984); *Strange v. Ostlund,* 594 P.2d 877, 880 (Utah 1979).[8]

Having concluded that the reply affidavit was properly before the court, it remains for us to "survey the evidence and all reasonable inferences fairly to be drawn therefrom in the light most favorable to [SLCC]," *Thompson v. Ford Motor Co.,* 16 Utah 2d 30, 395 P.2d 62, 63 (1964), and determine whether the trial court appropriately granted Hood's motion.

## ALTER EGO THEORY

The district court considered SLCC's alter ego claim, found it without merit, and granted Hood's motion. SLCC maintains that the district court should not have granted judgment since there were disputed issues of fact which precluded summary judgment. We agree.

■ "Ordinarily, a corporation is regarded as a separate and distinct legal entity from its stockholders." *Dockstader v. Walker,* 29 Utah 2d 370, 510 P.2d 526, 528 (1973). The purpose of such separation is to insulate the stockholders from the liabilities of the corporation, thus limiting their liability to only the amount that the stockholders voluntarily put at risk.[9] *See* Barber, *Piercing the Corporate Veil,* 17 Willamette L.Rev. 371, 371 (1981). Courts must balance piercing and insulating policies and will only reluctantly and cautiously pierce the corporate veil. *Colman v. Colman,* 743 P.2d 782, 786 (Utah App. 1987). *See Ramsey v. Adams,* 4 Kan.App. 2d 184, 603 P.2d 1025, 1027 (1979).

■ In *Norman v. Murray First Thrift & Loan Co.,* 596 P.2d 1028 (Utah 1979), the Utah Supreme Court adopted a two-prong test to determine when disregarding the corporate entity is justified:

[I]n order to disregard the corporate entity, there must be a concurrence of two circumstances: (1) there must be such

---

7. While there is some disagreement about how the district court treated the "reply affidavit," according to the order of the district court the pleadings, motion for summary judgment, affidavit of Marc Laulhere, memorandum of points and authorities *and reply affidavit of SLCC's counsel* constituted the record upon which it based its decision. There is no indication the "reply affidavit" was disregarded because of its irregularity. Moreover, in resisting the motion for reconsideration, Hood's position was that all of SLCC's points had been included in the "reply affidavit" and that the apparently accurate quotations therein from the Laulhere deposition were treated as properly before the district court when it considered the initial motion for summary judgment.

8. Failure to object to the "reply affidavit" was not an oversight, but a calculated risk. As explained by Hood's counsel at oral argument, Hood determined not to object to the affidavit out of concern that if the court struck the affidavit, it would probably also continue the hearing and give SLCC a chance to submit a proper affidavit—one that might more artfully set forth facts suggesting James was the alter ego of Hood.

9. "[This] limited liability ... promote[s] commerce and industrial growth by encouraging shareholders to make capital contributions to corporations without subjecting all their personal wealth to the risks of the business." Barber, *Piercing the Corporate Veil,* 17 Willamette L.Rev. 371, 371 (1981).

unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact, the alter ego of one or a few individuals; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow.

*Id.* at 1030. *See also Colman v. Colman,* 743 P.2d at 786; *Automotriz Del Golfo De California v. Resnick,* 47 Cal.2d 792, 306 P.2d 1, 3 (1957). The first prong has been termed "the 'formalities requirement,' referring to the corporate formalities required by statute." *Messick v. PHD Trucking Serv., Inc.,* 678 P.2d 791, 794 (Utah 1984). The second prong of the test may be called the "fairness requirement," Barber, *Piercing the Corporate Veil,* 17 Willamette L.Rev. 371, 376 (1981), and "is addressed to the conscience of the court." *Messick v. PHD Trucking Serv., Inc.,* 678 P.2d at 794. A key feature of the alter ego theory is that it is an equitable doctrine requiring that each case be determined upon its peculiar facts. *National Bond Fin. Co. v. General Motors Corp.,* 341 F.2d 1022, 1023 (8th Cir.1965).

Case law provides numerous suggestions as to what particular factors are relevant to determining whether the two-prong test has been met. *E.g., Colman v. Colman,* 743 P.2d at 786. *See United States v. Advance Mach. Co.,* 547 F.Supp. 1085, 1093 (D.Minn.1982). In the parent-subsidiary situation, the central focus of the formalities prong is "the degree of control that the parent exercises over the subsidiary and the extent to which the corporate formalities of the subsidiary are observed." Barber, *Piercing the Corporate Veil,* 17 Willamette L.Rev. at 397.

One commentator has listed eleven factors relevant to deciding whether the parent exercises "the necessary control" over its subsidiary. *Id. See id.* at 398. Six are pertinent to the present case: 1) "the parent corporation owns all or most of the capital stock of the subsidiary"; 2) "the parent corporation finances the subsidiary"; 3) "the subsidiary has grossly inadequate capital"; 4) "the parent corporation pays the salaries and other expenses or losses of the subsidiary"; 5) "the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest"; and 6) "the formal legal requirements of the subsidiary are not observed." *Id.* at 398.

■ SLCC's "reply affidavit," read in the light most favorable to SLCC, sets forth facts which tend to show that Hood owns 100% of James's capital stock; Hood finances James and has paid some of its debts; James is undercapitalized; [10] and James's directors and officers do not act independently of Hood. Particularly relevant is the affidavit's claim that Hood has advanced funds to James on an "as needed" basis, without formal documentation and with no particular requirements for repayment.

In order for SLCC to successfully oppose Hood's motion for summary judgment and send the issue to a fact-finder, it is not necessary for it to actually prove its alter ego theory—and the "reply affidavit" falls far short of doing that. It is only necessary for SLCC to show "facts" which controvert the "facts" stated in Hood's affidavit. As indicated in the preceding paragraph, SLCC demonstrated unresolved factual questions which make the grant of summary judgment to Hood improper.

10. "[T]he adequacy of [a] corporation's capitalization looms large in [a] court's evaluation of the unfairness prong. A leading commentator on corporate law has emphasized the importance of this element in piercing situations:

It is coming to be recognized as the policy of the law that shareholders should in good faith put at the risk of the business unencumbered capital reasonably adequate for its prospective liabilities. If the capital is illusory or trifling compared with the business to be done and the risks of loss, this is a ground for denying the separate entity privilege."

Barber, *Piercing the Corporate Veil,* 17 Willamette L.Rev. at 386 (quoting H. Ballantine, Ballantine on Corporations 303 (1946)).

The judgment appealed from is accordingly reversed and the matter remanded for trial or such other proceedings as may be appropriate.

GARFF, J., concurs.

BENCH, J., concurs in the result.