Louis L. TIMM, John Neiuwland, and Floyd M. Childs, trustees of United Precision Machine and Engineering Company Profit Sharing Trust; ABCO Insurance Agency, Inc., a Utah corporation; and Joseph L. Henroid, trustee for the Annette Jacob Trust, Plaintiffs, Appellees, and Counterclaim Defendants,

v.

T. LaMar DEWSNUP and Aletha Dewsnup; Arrow Investment Co., a limited partnership; The Federal Land Bank of Berkley; Imperial Land Title Inc., as trustee and Eugene L. Carson and Elaine Carson as beneficiaries; Stringham, Masuran, Larsen & Sabin, a professional corporation; Mineral Fertilizer Co., Inc.; and Harry V. Kaps, Defendants, Appellants, and Counterclaimants.

No. 910157.

Supreme Court of Utah.

April 27, 1993.

Michael Z. Hayes, Salt Lake City, for plaintiffs.

Russell A. Cline, Salt Lake City, for Dewsnups.

HOWE, Associate Chief Justice:

Defendant Aletha Dewsnup appeals the trial court's denial of her motions to (1) amend her counterclaim, and (2) either reconsider and set aside a summary judgment entered against her or certify the summary judgment as final so that she could appeal it. Defendant T. LaMar Dewsnup, Aletha's husband, died in 1986 during the pendency of this action.

## FACTS

In June of 1978, the Dewsnups, farmers in Delta, Utah, with the help of two attorneys who the Dewsnups assert represented them, borrowed $119,000 for a two-year period to purchase a motel. The lenders were the Annette Jacob Trust, of which one of the attorneys was a trustee, the United Precision Machine and Engineering Company Profit Sharing Trust, and ABCO Insurance Agency, Inc. As security, the Dewsnups offered their 160–acre farm, together with its water rights. They were required to make an interest-only payment on the loan on June 1, 1979, and to pay the loan in full by June 1, 1980. The attorneys' firm prepared the loan documents that the Dewsnups executed, including three promissory notes and a trust deed to secure the notes. The Dewsnups later contended that they were not aware at that time (1) that the trust deed included, in addition to their farm, 56.71 acres of land in Oak City, Utah, that Aletha Dewsnup had inherited, and (2) that one of the papers they signed assigned to the lenders the Dewsnups' interest as purchasers in a real estate contract. The assignment was given as additional security for the notes.

The Dewsnups entered into the real estate contract in 1976 with Arrow Investment Company to purchase farm land adjacent to their farm. The contract provided that the $400,000 purchase price would be paid in twenty annual installments of $47,880.50, due on January 2 each year. The contract also stated that should the Dewsnups default on any payment and remain in default for five months (until June 2 of the same year), they would forfeit any interest in the contract and property.

The Dewsnups failed to timely pay the 1979 property taxes on the Arrow land and failed to make the 1980 annual January 2 payment on the Arrow contract. On June 7, 1980, the lenders made the January 2 payment and paid the past due 1979 property taxes. They then demanded that the Dewsnups reimburse them for those amounts because the assignment of contract required reimbursement for payments made by the lenders "under or pursuant to" the purchase contract. The Dewsnups refused to reimburse, contending that because the default terminated the purchase contract on June 2, by its own terms, the June 7 payments could not have been made under and pursuant to the purchase contract.

Although the Dewsnups had made the interest payment on the loan on June 1, 1979, they were unable to pay the loan in

full when it came due a year later. The lenders commenced a nonjudicial foreclosure of the trust deed, and in September of 1980, they filed this action against the Dewsnups to foreclose the assignment of contract because of their failure to pay the loan and to reimburse the lenders for the 1979 property taxes and the 1980 $47,880.50 installment on the Arrow contract. The Dewsnups engaged a new attorney who filed an answer and a counterclaim, seeking to (1) reform the trust deed to conform with what they asserted were the intentions of the parties, i.e., to include only the 160–acre farm and the water rights, and (2) vacate the assignment of the Arrow contract as security for the payment of the notes. The counterclaim alleged a breach of fiduciary duty on the part of their former attorneys, who the Dewsnups asserted had also acted on behalf of the lenders, in failing to fully advise the Dewsnups of the content of the loan documents.

In December of 1980, the Dewsnups sold the motel, paid the $119,000 loan in full, and asked the lenders to reconvey the trust deed. The lenders refused unless they were reimbursed for the $47,880.50 payment they made on the Arrow contract and the 1979 property taxes in the sum of $2,085.71. In March of 1981, the lenders moved for summary judgment for those amounts plus attorney fees. Neither the motion for summary judgment nor the notice of the hearing on the motion mentioned the counterclaim.

The Dewsnups' attorney did not appear at the hearing, and the trial court granted summary judgment and a decree of foreclosure against their interest in the contract in favor of the lenders for the amounts sought in their motion. The summary judgment did not refer to the counterclaim by name. The lenders then pursued the foreclosure until April 23, 1981, when the Dewsnups filed chapter 11 (business reorganization) bankruptcy to forestall the foreclosure. The chapter 11 bank-

ruptcy was never completed, and in June of 1984, the Dewsnups filed chapter 7 (liquidation) bankruptcy, which was pending at the time of this appeal. In March of 1986, the Dewsnups filed an adversary proceeding in bankruptcy court, primarily to determine whether they could void the lenders' lien in excess of the fair market value pursuant to 11 U.S.C. section 506.[1]

On January 6, 1991, the chapter 7 bankruptcy trustee abandoned the counterclaim the Dewsnups had filed in this action, and two weeks later, Mrs. Dewsnup filed (1) a motion to amend the counterclaim and (2) a motion to reconsider and set aside the summary judgment or, in the alternative, to certify the summary judgment as final pursuant to rule 54(b), Utah Rules of Civil Procedure, so that she could appeal it. The trial court denied both motions, holding that it had "implicitly" denied the counterclaim when it granted summary judgment in 1981 and that the summary judgment was "a final appealable judgment" at that time. Consequently, it would now be improper to certify it for appeal under rule 54(b).

## ANALYSIS

### Adjudication of Counterclaim

 Mrs. Dewsnup contends that the trial court erred in denying her motion to amend her counterclaim. The denial was based on the court's determination that the counterclaim had been implicitly denied by the summary judgment and thus had been wholly disposed of and was no longer subject to amendment. She argues that the counterclaim and the issues raised therein were not before the court at the time the summary judgment was granted, that the counterclaim was unaffected by the judgment, and that the court should have addressed on its merits her motion to amend the counterclaim.

Rule 56(a) and (b), Utah Rules of Civil Procedure, states that a party seeking to

---

**1.** This issue was appealed to the United States Supreme Court. The Court held that 11 U.S.C. section 506(d) does not permit a chapter 7 debtor to void that part of a lien on real property in

excess of its fair market value. *Dewsnup v. Timm,* 502 U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

recover on a claim, counterclaim, or cross-claim or the party against whom a claim, counterclaim, or cross-claim is asserted may move for summary judgment in his favor "upon all or any part thereof." We held in *Bennion v. Amoss*, 28 Utah 2d 216, 500 P.2d 512 (1972), that summary judgment on a complaint is not precluded by the existence of a counterclaim. Also, cases which raise issues of both fact and law may lend themselves to summary judgment only on issues of law.

■ The moving party determines the scope of a motion for summary judgment. That party decides what issues to present to the court for adjudication. He or she may move for summary judgment on all or less than all of the issues raised by the complaint and answer and may also move for determination of issues raised by any counterclaim or cross-claim if he or she deems it appropriate. When the moving party has decided what the scope of the motion for summary judgment shall be, rule 56 contemplates that a written motion shall be served on the opposite party setting forth with clarity the relief sought by the motion so that the opposite party may prepare to defend against it if he or she chooses to do so.

■ Summary judgment procedure is generally considered a drastic remedy, requiring strict compliance with the rule authorizing it. *Parmelee v. Chicago Eye Shield Co.*, 157 F.2d 582, 168 A.L.R. 1130 (8th Cir.1946). In *Lazar v. Allen*, 347 So.2d 457 (Fla.Dist.Ct.App.1977), the court stressed the importance of "scrupulously observing the notice requirements" prior to entering summary judgment. The Florida Supreme Court has observed:

> If the [requirements of the rules] are not fulfilled, both in letter and spirit, the summary judgment procedure may become a vehicle of injustice rather than a salutary medium of reaching a swift but just result on a pure matter of law, as intended by the framers of the rules.

*Cleveland Trust Co. v. Foster*, 93 So.2d 112, 114 (Fla.1957).

In accordance with that policy, the Florida District Court of Appeal in *Faussner v. Wever*, 432 So.2d 100 (Fla.Dist.Ct.App. 1983), held that a summary judgment awarded to a seller in an action brought by a buyer seeking specific performance did not mean that the seller was also necessarily entitled to summary judgment on his counterclaim against the buyer for retention of the earnest money. The court held that in order to recover on the counterclaim, the seller had to make a motion for summary judgment to that effect and give notice as required by the rules of civil procedure. In a later decision of the same court, *Redding v. Powell*, 452 So.2d 132 (Fla.Dist.Ct.App.1984), at issue was whether a summary judgment for foreclosure of a mortgage disposed of a counterclaim for an accounting and for a satisfaction of the mortgage. The *Redding* court held that "the summary judgment did not dispose of appellant's counterclaim because the record indicates that neither appellee's motion for summary judgment nor the court's order specifically mentioned or referred to the counterclaim." *Id.* at 135.

A review of this court's decisions indicates that we have allowed summary judgments to be granted without strict compliance to the rules only when both parties are present and no prejudice is shown. In *Security Title Co. v. Payless Builder's Supply*, 17 Utah 2d 179, 407 P.2d 141 (1965), we found no error in a summary judgment granted at the close of a pretrial hearing when both parties were present, although the ten-day notice required by the rules had not been given. *See also Crookston v. Fire Ins. Exch.*, 817 P.2d 789 (Utah 1991); *Western States Thrift & Loan Co. v. Blomquist*, 29 Utah 2d 58, 504 P.2d 1019 (1972). In contrast, we held in *Hein's Turkey Hatcheries, Inc. v. Nephi Processing Plant, Inc.*, 24 Utah 2d 271, 470 P.2d 257 (1970), that a motion for summary judgment filed on the day of trial was not timely.

Turning to the instant case, the lenders contend that although neither the motion for summary judgment, the notice of the hearing on said motion, nor the summary judgment itself made mention or reference to the counterclaim by name, the counter-

claim was implicitly denied when summary judgment was granted. This contention requires us to examine what issues were raised by the counterclaim and what issues were resolved by the summary judgment.

In their counterclaim, the Dewsnups alleged that their attorneys had failed to fully advise them that the trust deed they executed included property in addition to the 160–acre farm and had failed to advise them that they were also assigning their equity in the Arrow contract as additional security for the $119,000 loan. They further alleged that they did not learn of these facts until two years later, in June of 1980. The relief which they sought in their counterclaim was a decree reforming the trust deed to include only the 160–acre farm and its water rights and vacating the assignment of the Arrow contract. The lenders replied to the counterclaim by denying each and every allegation. Thereafter, the lenders moved for summary judgment against the Dewsnups for the principal sum of $49,-966.21, plus accrued interest and attorney fees. As set forth in the affidavit of one of the lenders, the principal sum consisted of the $47,880.50 payment that the lenders had made on the Arrow contract and the $2,085.71 property taxes. The Dewsnups would not have owed these two amounts if they could have proved as alleged in their counterclaim that they did not intend the Arrow contract to be part of the security for the loan. Therefore, we are led to conclude that although the motion for summary judgment, the notice of hearing on the motion, and the summary judgment itself made no reference to the counterclaim by name, the grant of summary judgment implicitly and necessarily constituted an adverse ruling on that part of the counterclaim that sought reformation to exclude the Arrow contract as security in the loan transaction. *See Ford Motor Co. v. Transport Indemnity Co.*, 795 F.2d 538, 543 (6th Cir.1986) (if district court's ruling on one claim necessarily precludes alternative or mutually exclusive claim, final order will arise despite lack of explicit declaration by district court).

However, in accordance with the policy that the procedure for summary judgment should be strictly observed, we conclude that nothing else was implicitly adjudicated by the grant of summary judgment. Inasmuch as the lenders, as the moving party, made no express reference to the counterclaim or the issues raised by it in their motion or in their notice of hearing, none of the other issues raised by the counterclaim were implicated by the grant of summary judgment. Those issues remain unaffected in the trial court. One of those issues is whether the parties intended to include the Oak City property in the trust deed.

Mrs. Dewsnup also asserts that the trust deed secures only the promissory notes but does not secure payment of the summary judgment, which was for the 1980 annual installment on the Arrow contract and the 1979 property taxes on the Arrow land. We do not reach this question because neither the merits of the summary judgment nor the interpretation of the trust deed is before us for review. At this point, there is no final judgment subject to appellate review.

### Motion to Amend Counterclaim

 Having determined that the trial court erred in its conclusion that the counterclaim was implicitly wholly disposed of and that part of the counterclaim remains in the trial court, we now turn to the court's denial of Mrs. Dewsnup's motion to amend the counterclaim. A motion to amend a pleading is addressed to the discretion of the trial court. Here, the court did not exercise its discretion because it took the position that the counterclaim was no longer before it and subject to amendment. Therefore, it is necessary to remand this case to the trial court to address the merits of the motion to amend so that the court may exercise its discretion with regard to it.

For the guidance of the trial court, we briefly review our case law on amendments to pleadings. Rule 15(a), Utah Rules of Civil Procedure, permits amendment with leave of the court and states that "leave shall be freely given when justice so requires." In *Cheney v. Rucker*, 14 Utah 2d 205, 211, 381 P.2d 86, 91 (1963), we held

that rule 15 should be interpreted liberally so as to allow parties to have their claims fully adjudicated: "[The rules of civil procedure] must all be looked to in the light of their even more fundamental purpose of liberalizing both pleading and procedure to the end that the parties are afforded the privilege of presenting whatever legitimate contentions they have pertaining to their dispute." *See also Johnson v. Brinkerhoff*, 89 Utah 530, 538–39, 57 P.2d 1132, 1136 (1936) ("[T]he policy of the law is toward liberality in the allowance of amendments and to regard them favorably in order that the real controversy between the parties may be presented, their rights determined, and the cause decided."); *Hancock v. Luke*, 46 Utah 26, 38, 148 P. 452, 457 (1915) ("Courts should be liberal in allowing amendments to the end that cases may be fully and fairly presented on their merits.").

This liberal application of rule 15(a), however, is limited when the opposing party does not have adequate opportunity to respond to the amended pleadings. In overruling the trial court's denial of a rule 15 motion to amend, we held in *Lewis v. Moultree*, 627 P.2d 94, 98 (Utah 1981), that leave to amend should have been granted because the opposing party had "fair opportunity" to respond to the amended pleading: "A prime consideration in determining whether an amendment should be permitted is the adequacy of an opportunity for the opposing party to meet the newly raised matter." This court had previously noted:

> Some tempest has been raised about the court allowing the plaintiff to make tardy amendments to the pleadings.... The pleadings are never more important than the case that is before the court.... There can be no prejudice in this case because we'll give ample time for an answer.... This is in harmony with what we regard as the correct policy: of recognizing the desirability of the pleadings setting forth definitely framed issues, but also of permitting amendment where the interest of justice so requires, and the adverse party is given a fair opportunity to meet it.

*Thomas J. Peck & Sons, Inc. v. Lee Rock Prods., Inc.*, 30 Utah 2d 187, 193, 515 P.2d 446, 449–50 (1973) (citations omitted), *quoted in Lewis*, 627 P.2d at 98.

Mrs. Dewsnup contends that this court has never upheld a trial court's refusal to grant leave to amend a pleading before a trial date has been set because at that point in the litigation, the opposing party will always have time to respond to the amended pleading. She refers to *Gillman v. Hansen*, 26 Utah 2d 165, 486 P.2d 1045 (1971), in which we found that a trial court abused its discretion in refusing to permit the defendant to amend its answer and add a counterclaim when the case had not been set for trial. Conversely, Mrs. Dewsnup asserts that we have *upheld* a trial court's refusal to grant leave to amend only when the amendment was sought shortly before trial or at trial so that the opposing party did not have adequate time to respond. *See Staker v. Huntington Cleveland Irr. Co.*, 664 P.2d 1188, 1190 (Utah 1983) (trial court's denial of motion to amend answer on day of trial affirmed); *Girard v. Appleby*, 660 P.2d 245 (Utah 1983) (no abuse of discretion in trial court's denying motion to amend made on first day of trial).

The lenders assert that they would be prejudiced by any amendment coming after ten years of dormancy of the case. On remand, any defenses or arguments against amendment may be presented to the trial court. It should be observed that the long delay was occasioned by the bankruptcy proceedings and is largely not the fault of either party. Also, one of the issues which Mrs. Dewsnup seeks to raise in the amended counterclaim is whether the trust deed secures reimbursement of the 1980 annual installment and the 1979 property taxes which the lenders paid on the Arrow contract and for which amounts summary judgment was granted. This issue would appear to involve only an interpretation of the loan documents, which would be unaffected by the passage of time.

■ The lenders further assert that collateral estoppel prevents Mrs. Dewsnup

from amending her counterclaim to raise the issue of whether the trust deed should have been reconveyed after the $119,000 loan was paid in December 1980. They contend that this issue was raised and litigated in an adversary proceeding in the bankruptcy court. Collateral estoppel or issue preclusion prevents the relitigation of issues determined in a prior action. *Malone v. Parker*, 826 P.2d 132, 136 (Utah 1992). In raising the defense of collateral estoppel, the lenders have the burden of proof.

The party invoking this doctrine must demonstrate the following: (1) the issue involved in the subsequent action is identical to the issue decided in the previous action; (2) the issue was decided in a final judgment on the merits; (3) the issue was competently, fully, and fairly litigated in the first action; and (4) the party against whom the doctrine is invoked must be either a party to the first action or in privity with that party.

*Id.*

■ In reviewing the record, we find that the issue of whether the trust deed should be reconveyed as a result of the payment of the promissory notes was raised in the Dewsnups' complaint in the bankruptcy court and in the trial briefs of both parties. However, the lenders have offered no evidence that the bankruptcy court ruled on the merits of this issue. The memorandum decision and the judgment of dismissal make no reference to the issue; they refer only to the 11 U.S.C. section 506 bankruptcy issue as to whether the Dewsnups are entitled to avoid liens in excess of the fair market value of the property and then redeem the property. Mrs. Dewsnup contends that she tried to raise the issue, but the bankruptcy court would not consider it.

Because the party asserting collateral estoppel has the burden of proof and there is no evidence of the bankruptcy court's determination of the issue, we hold that the bankruptcy court did not determine the issue. The lenders drafted the judgment of dismissal, which simply states that the Dewsnups' adversary proceeding is dismissed in its entirety with prejudice, with no findings of facts or reference to the Dewsnups' claims. Consequently, there has been no issue preclusion. In all likelihood, the bankruptcy court thought that the summary judgment had determined the issue, and the court did not want to go behind the state court judgment. See *Heiser v. Woodruff*, 327 U.S. 726, 734, 66 S.Ct. 853, 857, 90 L.Ed. 970, 976–77 (1946), which holds that where a state court judgment has been validly rendered, that judgment "is now res judicata and may not be further litigated in the bankruptcy proceeding." As earlier expressed in this opinion, we do not reach the issue on this appeal.

### Motion to Reconsider the Summary Judgment or Certify as Final under Rule 54(b)

■ The trial court denied Mrs. Dewsnup's motion to reconsider the summary judgment, stating that "no such motion exists under the Utah Rules of Civil Procedure." In so ruling, it relied on *Peay v. Peay*, 607 P.2d 841 (Utah 1980). *See also Drury v. Lunceford*, 18 Utah 2d 74, 415 P.2d 662 (1966) (to the same effect). Those cases, however, do not hold that a motion to reconsider does not exist in the circumstances presented by this case, where a final judgment has not been entered.

Mrs. Dewsnup relies on the provisions of rule 54(b) and in the court of appeals' analysis in *Salt Lake City Corp. v. James Constructors*, 761 P.2d 42 (Utah Ct.App. 1988), for her contention that a motion to reconsider exists and it was error for the trial court not to grant the motion. She asserts that because the summary judgment did not wholly dispose of the case, the judgment is "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Utah R.Civ.P. 54(b). Mrs. Dewsnup contends that under the analysis in *James Constructors*, a motion to reconsider, although not explicitly allowed in the Utah Rules of Civil Procedure, may be permitted under rule 54(b). The court in *James Constructors* stated that rule 54(b) "does allow for the possibility of a judge changing his or her mind in

cases involving multiple parties or multiple claims." *Id.* at 44. Although the court affirmed the trial court's refusal to reconsider, it was not on the basis of the nonexistence of such a motion, but rather, the court looked beyond the procedural question to the merits, i.e., the potential for a different outcome if the motion to reconsider were granted. Because the court of appeals found that no new material facts came to light between the entry of summary judgment and the subsequent motion to reconsider, it found no error in the trial court's denial of the motion. *Id.* at 45. We have also previously held that rule 54(b) permits reconsideration of a nonfinal judgment "since it facilitates the just and speedy resolution of disputes in the trial court." *Kennedy v. New Era Indus., Inc.,* 600 P.2d 534, 536 (Utah 1979).

We hold that pursuant to the provisions of rule 54(b), because the summary judgment was "subject to revision," a motion to reconsider is a reasonable means of requesting such a revision and is therefore permitted. On remand, the trial court is to address the motion on its merits.

In summary, we reverse the trial court's order denying Mrs. Dewsnup's motion to amend her counterclaim and her motion for reconsideration of the summary judgment. We do not reach the denial of Mrs. Dewsnup's motion to certify the summary judgment as final under rule 54(b) because that issue is moot. The case is remanded for further proceedings consistent with this opinion.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.