Gregory CALDWELL, Plaintiff
and Appellant,

v.

FORD, BACON & DAVIS UTAH, INC.,
a Utah corporation, Defendant
and Appellee.

No. 20246.

Supreme Court of Utah.

July 31, 1989.

Joseph E. Hatch, Salt Lake City, for plaintiff and appellant.

Randall S. Feil, Brent P. Lorimer, Salt Lake City, for defendant and appellee.

ZIMMERMAN, Justice:

Gregory Caldwell appeals from the district court's grant of summary judgment in favor of Ford, Bacon & Davis Utah, Inc. ("FB & D"), claiming that a disputed material issue of fact exists with regard to whether he was wrongfully discharged. We affirm the trial court's grant of summary judgment.

In reviewing a grant of summary judgment, we liberally construe all evidence and reasonable inferences therefrom in favor of the party opposing the motion. *Berube v. Fashion Centre, Ltd.,* 771 P.2d 1033, 1039 (Utah 1989); *Payne ex rel. Payne v. Myers,* 743 P.2d 186, 187–88 (Utah 1987); *Oberhansly v. Sprouse,* 751 P.2d 1155, 1156 (Utah Ct.App.1988). After viewing the evidence in this fashion, we must still be convinced that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R.Civ.P. 56(c); *see, e.g., Geneva Pipe Co. v. S & H Ins. Co.,* 714 P.2d 648, 649 (Utah 1986). Our factual recitation is in accordance with the above standard of review and casts the facts in a light most favorable to appellant.

Caldwell was hired by FB & D in June of 1981 as a piping drafter and designer. During his hiring interview, there was no mention of any specific duration of employment nor of any employment contract, but Caldwell does recall being told that an employee could not be fired without first receiving three letters or three warnings. FB & D did have a policy that employees would not be discharged *for cause* without certain warnings. That policy was contained in a policy manual promulgated by

FB & D. This manual consisted of a series of numbered "Employee Operations Bulletins" dealing with various company operations and policies. Bulletin No. 902, promulgated by FB & D in April of 1979, prior to Caldwell's hiring, dealt with discharge for cause and described in detail the three steps to be taken prior to any such discharge. Another bulletin in the manual, No. 202, also promulgated in April of 1979, described the procedures and policies governing involuntary discharges other than those for cause. It provided that no notice was due employees involuntarily terminated, but in lieu thereof, they were entitled to separation pay. The amount of such pay was to be determined by a schedule in the bulletin based on the time spent at FB & D. The bulletin specifically stated that an employee dismissed for cause would forfeit all separation pay. The manual was not given to Caldwell at the time he was hired; however, he does recall receiving a copy within six months of his employment. In addition, a copy was available at his work station, and upon termination, Caldwell was given a copy of the policy manual.

Caldwell worked for FB & D from June of 1981 until August 9, 1982, when he received a separation notice. He was given no warning that he was going to be discharged. In fact, a week earlier he had received good-to-excellent job performance ratings and a raise. The separation notice stated that the reason for termination was "reduction of force." Along with the separation notice, Caldwell received a check for $2,069.96, which included separation pay of $1,040, determined in accordance with the schedule in bulletin No. 202. He later negotiated this check.

In June of 1983, Caldwell filed a complaint against FB & D for wrongful discharge. He alleged that he had been discharged for cause without compliance with the procedures set out in bulletin No. 902 of the policy manual and, furthermore, that there had been no just cause for his termination. He also claimed that his termination without cause was in violation of the public policy of the state of Utah.

FB & D denied all of Caldwell's claims and filed a motion for summary judgment, arguing that under Utah law, his employment was terminable at the will of either party and that the policy manual did not alter this relationship. In the alternative, FB & D contended that even if the policy manual modified the at-will character of the employment relationship by requiring FB & D to comply with its terms in discharging employees, Caldwell was nevertheless legitimately terminated involuntarily as a result of a reduction in force and his termination was handled properly under bulletin No. 202. In support of its motion, FB & D filed affidavits showing that FB & D had reduced its work force by approximately seventy-one employees between June of 1982 and June of 1984, that between August of 1982, the month of Caldwell's discharge, and May of 1983, eight of seventeen piping drafters and designers were reduced in force, and that Caldwell's termination was part of this reduction.

Caldwell opposed the summary judgment motion, arguing that the manual modified the traditional employment-at-will relationship, that failure to comply with bulletin No. 902 was a breach of contract and a violation of public policy, and that there was a factual dispute as to whether the dismissal was in fact part of a reduction in force. Caldwell offered no evidence to contradict FB & D's showing of a reduction in force or its affidavit stating that he was discharged pursuant to that reduction, except a statement in an answer to an interrogatory that he was being fired as a scapegoat for a supervisor, a fact allegedly admitted to him in conversation by the supervisor who fired him.

The court granted FB & D's motion for summary judgment without stating its reasons.[1]

---

1. Failure to state the reasons for either granting or denying a motion when multiple grounds for the motion are advanced is now improper. Utah R.Civ.P. 52(a). At the time of this case, however, this rule did not contain its present language directed to this point. Effective January 1, 1987, rule 52(a) was amended to include the requirement that "[t]he court shall ... issue a brief written statement of the ground for its decision on all motions granted under Rules

On appeal, the parties essentially repeat their arguments below. Caldwell contends that the employment-at-will doctrine was modified by the promulgation of discharge policies and procedures in the policy manual. He relies on any one of three theories for this claim: (i) a breach of the covenant of good faith and fair dealing; (ii) a violation of public policy; and/or (iii) breach of an implied-in-fact contract. If any of the above theories apply in Utah to modify the employment-at-will relationship, Caldwell argues that material issues of fact are in dispute and summary judgment should not have been granted.

FB & D argues, on the other hand, that the employment-at-will doctrine has not been modified in Utah, but even if it has, there is still no material issue of fact in dispute because Caldwell was legitimately reduced in force pursuant to provisions in the policy manual.

■ This case was argued before our decision in *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033 (Utah 1989). In *Berube*, we clarified the law regarding the employment-at-will doctrine and made it plain that employment at will is not a rule of law that envelopes employer-employee relations, but merely a presumption regarding the relationship between the parties that can be rebutted. *Id.* at 1044, 1050 (Durham, J., joined by Stewart, J.), 1051 (Zimmerman, J., concurring in the result). A majority of the *Berube* Court declined to recognize a cause of action for a breach of a covenant of good faith and fair dealing under situations such as the present one. *Id.* at 1050 (Howe, J., concurring, joined by Hall, C.J.), 1051–52 (Zimmerman, J., concurring in the result). A majority of the Court also de-

clined to adopt a broad public policy exception to the employment-at-will doctrine that would routinely make it a violation of public policy to discharge an employee in breach of an employment agreement for other than good cause.[2] *Id.* at 1050 (Howe, J., concurring, joined by Hall, C.J.), 1050–51 (Zimmerman, J., concurring in the result). Finally, a majority of the *Berube* Court concluded that an employer's internally adopted policies and procedures concerning discharge can be sufficient evidence to rebut the presumption of at-will employment and can, in effect, become part of the contractual relationship between the employer and the employee. Breach of the terms of this contractual relationship can result in damages determined as in any other breach of contract action. *Id.* at 1044–46, 1050 (Durham, J., joined by Stewart, J.), 1052–53 (Zimmerman, J., concurring in the result).

■ We dispose of the present case in light of *Berube*. The first question is whether the statements in the policy manual are sufficient to raise a factual question as to whether the presumption of at-will employment has been rebutted. Under *Berube*, there seems little question that on these facts, a jury could so find, since in that case all members of the Court voted to remand for trial on the question of whether Berube had been discharged in breach of an employment agreement. There, as here, the terms of the manual were not made known to the employee before hiring, yet we held that they could be found to rebut the at-will presumption and constitute the terms of Berube's continued employment.[3]

■ Under *Berube*, then, a fact question exists as to whether the at-will presump-

---

12(b), 50(a) and (b), 56, and 59 when the motion is based on more than one ground."

**2.** Just as there was no occasion in *Berube* to describe any possible public policy exception in detail, so there is none here. However, a majority of the Court in *Berube* did indicate that there are occasions when we might find a public policy exception to the employment-at-will doctrine. *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1042–43 (Utah 1989) (Durham, J., joined by Stewart, J.), 1051 (Zimmerman, J., concurring in the result).

**3.** The Court for the Southern District of South Dakota stated well the position of the courts approaching employers' internal policies as creating contractual obligations, although not accepting this approach itself in *Brumbaugh v. Ralston Purina Co.*, 656 F.Supp. 582, 584–85 (S.D.Iowa 1987):

[A]n employer's statements of policy, practice and procedures can give rise to contractual rights in employees without evidence that the parties mutually agreed that the policy statements would create contractual rights in the employee, and, ... hence, although the statement of policy is signed by neither party, can

tion has been rebutted and whether the provisions of the policy manual were part of the terms of employment. However, despite the existence of this fact question, we conclude that the summary judgment was properly granted. This is because even if Caldwell were successful in making the policy manual's discharge provisions the terms of his employment, those provisions are not ambiguous, and in the absence of ambiguity, the interpretation of a contract's terms is a question of law, a question we can determine as well as the trial court. *See Ron Case Roofing and Asphalt Paving, Inc. v. Blomquist,* 773 P.2d 1382 (Utah 1989); *Kimball v. Campbell,* 699 P.2d 714, 716 (Utah 1985). We conclude that FB & D could not be found to have breached the terms of the manual when it discharged Caldwell.

Paragraph 6(a) of bulletin No. 202 plainly permits "involuntary terminations," other than for cause, without notice so long as FB & D pays the terminated employee a specified separation pay fixed by reference to the length of time the employee has been with FB & D. A warning notice is required only when a discharge is for cause under bulletin No. 902. Paragraph 6(b) of bulletin No. 202 further states that only an employee dismissed for cause forfeits separation pay. Caldwell was told that he was being discharged as part of a reduction in force, and he received and negotiated a check for separation pay determined under paragraph 6(b). This would make it appear that he was properly terminated under bulletin No. 202. Caldwell claims, nevertheless, that his firing was "for cause" and should have been handled under bulletin No. 902 because FB & D had a reason, in addition to the reduction in force, to discharge him. He submits no evidence to contradict FB & D's showing that a reduction in force was taking place in his position category at the time of his discharge and that he was discharged in the course of that reduction in force. His argument is, in essence, that even when FB & D is involuntarily terminating employees as part of a reduction in force, if it individually evaluates candidates for discharge and picks and chooses among them rather than using some arbitrary mechanism for determining who is discharged, such as a "last in, first out" rule, it is, in fact, discharging those selected for termination "for cause" and must follow the procedures set out in bulletin No. 902. There is no merit to this contention. The language of the manual does not require such a result. It plainly contemplates that involuntary terminations other than those for cause may be made by FB & D and does not limit the reasons for which the employer may make them, and it certainly does not require that reductions in force be based on some arbitrary criteria.

On the facts as they were presented to the district court, we find that FB & D was entitled to summary judgment. Even if Caldwell were to prevail and show that the policy manual constituted the terms of his employment, he would still be unable to recover. There is no genuine issue of material fact as to whether FB & D was, in fact, conducting a reduction in force or whether Caldwell was terminated as part of that program. That being the case, FB & D would have been entitled to rely on paragraph 6(a) of "Operations Bulletin No. 202" in effecting his termination. On the other hand, if Caldwell could not demonstrate that the terms of the manual limited his employer's powers to terminate him, the employment-at-will presumption would be unrebutted and he could have been terminated at will.

There is no need to reach the other issues raised by Caldwell. The judgment below is affirmed.

HALL, C.J., HOWE, Associate C.J., and DURHAM, J., concur.

STEWART, J., dissents.

---

be unilaterally amended by the employer without notice to the employee, and contains no reference to a specific employee, his [or her] job description or compensation, and al-

though no reference was made to the policy statement in preemployment interviews and the employee does not learn of its existence until after his [or her] hiring.