Lee Ann **HODGSON**, Plaintiff and Appellant,

v.

**BUNZL UTAH, INC., and Carl A. Kruse,** Defendants and Appellees.

No. 910037.

Supreme Court of Utah.

Dec. 23, 1992.

Dean W. Sheffield, Salt Lake City, for plaintiff and appellant.

Max D. Wheeler, Stanley J. Preston, Salt Lake City, for defendants and appellees.

HOWE, Associate Chief Justice:

Plaintiff Lee Ann Hodgson appeals from a summary judgment dismissing her wrongful discharge action against her former employer, Bunzl Utah, Inc., and Bunzl manager Carl A. Kruse.

Bunzl hired Hodgson as a bookkeeper in January 1986. Prior thereto, Terry Frank, Bunzl's manager, interviewed her and explained that the employment offered would be at will. Frank added that the company followed disciplinary procedures to give employees a chance to correct deficiencies. He also informed Hodgson that the company was in the process of preparing an employee handbook which would outline the disciplinary procedures. On the first day of her employment, she signed a document entitled "New Employee Checklist," which listed company policies concerning benefits, pay, work rules, and disciplinary procedures. Above her signature was a statement that employment at Bunzl may be terminated at will.

In April 1987, Hodgson received a copy of the employee handbook, which stated that employment at Bunzl was at will and that employees may be discharged with cause, without cause, or for rule violation. It specifically provided that "no employee may rely that a program of progressive discipline is in effect, but rather each employee must recognize that unless he/she has an express written Bunzl employment contract or agreement to the contrary, employment at Bunzl is at-will employment...." The handbook also stated that Bunzl expected employees to give a fourteen-day notice of separation and that Bunzl would give employees a fourteen-day notice of separation or fourteen days' severance pay. Finally, the handbook provided, "Any action of any Bunzl officer, manager, supervisor or representative in applying the terms of this Handbook, which may leave the appearance of establishing an employment contract of fixed or indefinite duration, is expressly without authorization and may not be relied upon by any Bunzl employee."

During Hodgson's employment, Bunzl manager Frank issued warnings and probationary periods to two employees concerning their deficiencies. In April 1987, Frank gave a warehouse operations manager a written memorandum of goals and set a sixty-day probationary period. Under Frank's direction, a driver/warehouseman received a written warning to improve his performance and was placed on a ninety-day probationary period. In November 1987, Carl Kruse replaced Frank as manager of Bunzl's Salt Lake City office. Under Kruse's management, two employees received warnings. A driver/warehouseman received an oral warning to improve but not a definite probationary period. An office clerk received an oral warning and thirty days to correct her performance.

When Hodgson began employment at Bunzl, its main business activity was supplying wholesale companies with paper products. Soon thereafter, Bunzl began expanding its business activities in Salt

Lake City, and this expansion continued during Hodgson's employment. Consequently, Hodgson's work load increased. She was the only office employee, and by November 1987, she was working every Saturday and several nights each week to keep up with the work load. Additionally, Bunzl managers occasionally asked her to remain in the office over her lunch hour to answer telephones. Hodgson began submitting late month-end accounting reports to Bunzl's home office, compelling Bunzl's regional comptroller to make two visits to the Salt Lake City office to assist her in finishing the reports. In January 1988, she received a merit raise despite the late reports. During the next four months, Hodgson continued to submit late month-end accounting reports. Kruse discharged her on May 21, 1988, without a warning or the benefit of a probationary period. Bunzl paid Hodgson two weeks' severance pay pursuant to the terms of the handbook.

■ Hodgson filed this action against Bunzl in December 1988 for wrongful termination and defamation. The trial court granted summary judgment for Bunzl, and Hodgson brings this appeal. Because summary judgment is granted as a matter of law, we give the trial court's legal conclusions no particular deference. *Winegar v. Froerer Corp.*, 813 P.2d 104, 107 (Utah 1991). We regard the facts and inferences in the light most favorable to the plaintiff. *Rose v. Allied Dev. Co.*, 719 P.2d 83, 84 (Utah 1986). In a case such as the one before us, where the facts are undisputed, the construction of contract terms is an issue of law to be decided by the court. *Caldwell v. Ford, Bacon & Davis Utah, Inc.*, 777 P.2d 483, 486 (Utah 1989).

■ The main issue presented is whether Bunzl's manager modified Hodgson's at-will employment status by disclosing to her in the preemployment interview that the company followed "disciplinary procedures" and by subsequently issuing warnings to four employees. Hodgson contends that this conduct created an implied-in-fact contract such that she could be discharged only after receiving notice to improve her performance. She maintains that even if

the employee handbook's disclaimer effectively dispelled the possibility of an implied-in-fact contract, Bunzl subsequently modified the terms of the handbook by continuing to follow the prehandbook procedure of issuing warnings. She grounds this argument in a statement in the handbook: "Bunzl reserves the right to modify, revoke, suspend, terminate, or change any or all such plans, policies, rules or procedures, in whole or in part, at any time with or without prior notice." Hodgson asserts that giving warnings to four employees after the distribution of the handbook was inconsistent with the at-will policy and constituted a modification of the handbook terms.

Bunzl responds that its behavior did not modify the at-will employment because Bunzl's "New Employee Checklist" and employee manual clearly and conspicuously state that employment was at will, and Frank told Hodgson in the preemployment interview that employment was at will. Bunzl reasons that Frank's remarks concerning the existence of disciplinary procedures and the issuance of warnings to four employees cannot reasonably be construed to create an implied-in-fact contract in light of Bunzl's written policies that employment was at will.

■ The relationship of employer and employee is a product of mutual assent expressed by an employer's offer of employment and an employee's acceptance. 53 Am.Jur.2d *Master and Servant* § 15 (1970). When an employment agreement mentions no period of duration, employment is presumed to be at will. *Rose*, 719 P.2d at 85. A plaintiff/employee may overcome this presumption by showing that the parties created an implied-in-fact contract, modifying the employee's at-will status. *Berube v. Fashion Ctr., Ltd.*, 771 P.2d 1033, 1044 (Utah 1989) (Durham, J., joined by Stewart, J.); *id.* at 1052–53 (Zimmerman, J., concurring in the result).

■■ We have stated that an employee may use an employer's written policies, bulletins, or handbooks as evidence of an implied-in-fact contract. *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 54 (Utah 1991).

Although this court has never held that an employer's conduct and oral disclosures alone created an implied-in-fact contract of employment, such evidence is a relevant indicator of the intent of the parties and the circumstances as a whole. *Id.* at 56. Additionally, the rules of contractual interpretation demand that we look at the intent of the parties and the circumstances as a whole in determining the meaning of a contract. *Rose,* 719 P.2d at 85; 17A C.J.S. *Contracts* § 295(b) (1963). Therefore, evidence of conduct and oral statements may establish an implied-in-fact contract even without the support of written policies, bulletins, or handbooks. In order for conduct and oral statements to establish an implied-in-fact contract, such evidence must be strong enough to overcome the presumption of at-will employment and any inconsistent written policies and disclaimers.

■ This court must interpret any conduct, oral statement, or written sentence asserted to be a term in a contract in a manner harmonious to the overall meaning of the contract. *Jones v. Hinkle,* 611 P.2d 733, 735 (Utah 1980). Accordingly, this court has held that when an employee handbook contains a clear and conspicuous disclaimer of contractual liability, any other agreement terms must be construed in light of the disclaimer. *Johnson v. Morton Thiokol, Inc.,* 818 P.2d 997, 1003 (Utah 1991).

To determine whether Bunzl created an implied-in-fact contract that modified Hodgson's at-will employment status, we must evaluate the implications of Frank's disclosure of disciplinary procedures and the subsequent issuance of warnings to four employees in light of Bunzl's written policies. The Bunzl employee handbook included a clear and conspicuous disclaimer of any contractual liability and asserted that managers who acted in a manner inconsistent with the company's policy of at-will employment were unauthorized to do so. Additionally, Frank explained to Hodgson during her preemployment interview that employment was at will, and Hodgson signed the "New Employee Checklist," which stated that employment was at will. Given

these circumstances, Hodgson could not reasonably have concluded that employment was other than at will on the basis that she heard oral remarks concerning disciplinary procedures and knew of four other employees who received warnings. Bunzl clearly intended to eliminate any employee misunderstandings about the status of employment.

■ The fact that four employees received warnings and probationary periods after Bunzl issued the handbook did not modify Bunzl's policy of at-will employment. In order for an employer's conduct to create an implied-in-fact contract modifying at-will employment, the conduct must meet the standards of a unilateral offer and acceptance. *Johnson,* 818 P.2d at 1002. The employer must communicate the intent to offer employment other than at will, the communication must be sufficiently definite to act as a contract provision, and the communicated intent must be such that the employee may reasonably believe that the employment offered is other than at-will. *Id.* The evidence Hodgson presents does not meet this standard. The warnings given to four Bunzl employees were not sufficiently definite to constitute a contract term because they were too inconsistent. The employees received probationary periods varying from ninety days to no specified period, and no guidelines existed for determining what probationary period should be prescribed for each type of misconduct. Additionally, the manner in which the warnings were issued varied considerably: Two employees received written memoranda, and the other two received oral warnings. Finally, Bunzl's issuance of the warnings could not reasonably justify an employee's conclusion that she could be discharged only after receiving a warning, particularly when viewed in light of the express statement in the handbook that "no employee may rely that a program of progressive discipline is in effect...." Although Hodgson may have subjectively believed that her employment could be terminated only after a warning, the standards of unilateral offer and acceptance require that Hodgson reasonably believe the employment was other than at will, and this

standard has not been met. Under the facts before us, the warnings rise no higher than a courtesy extended by Bunzl to employees who it apparently thought could easily remedy their deficiencies. Certainly no employer should be required or even expected to discharge an at-will employee for a minor infraction, even though the employer may technically have that right. Although Hodgson was not given a warning prior to her discharge, she was well aware of her employer's concern that her monthly reports were late, requiring Bunzl's regional comptroller to make two visits to Salt Lake City to assist her in completing the reports. While it may be true, as asserted by Hodgson, that Bunzl expected too much from her, it is understandable why Bunzl did not follow the option of giving her a warning rather than discharging her outright.

On the basis of these facts, a Bunzl employee could have reasonably relied only on the discharge procedure stated in the employee handbook. An employee handbook may create binding terms only if those terms are consistent with the meaning of the contract as a whole. *See Caldwell*, 777 P.2d at 486. Therefore, an employer may be bound to follow any discharge procedures outlined in an employee handbook. According to the employee handbook, Bunzl expected an employee to give a fourteen-day notice before leaving the company. In return, Bunzl would give employees who had worked longer than a year a fourteen-day notice or severance pay equivalent to fourteen days' earnings. This discharge procedure is consistent with Bunzl's policy of at-will employment because the procedure does not purport to establish limitations on Bunzl's right to discharge. Therefore, Hodgson could reasonably have expected to be discharged according to the employee handbook terms. This expectation was met when Bunzl complied with the terms of its handbook by giving Hodgson fourteen days' severance pay when she was terminated.

Hodgson urges this court to modify its position on the applicability of an implied covenant of good faith and fair dealing to employment contracts. We have previously declined to invoke an implied covenant of good faith and fair dealing in the context of employment contracts, declaring that an implied covenant cannot be used to alter the rights agreed to by the parties. *Brehany*, 812 P.2d at 55. Since indefinite-term employment is always presumed to be at will, applying the covenant would require changing the basic premise of the employer's and employee's agreement:

> [I]n the absence of express terms limiting the right of an employer to discharge for any or no reason and in the absence of provisions establishing procedures by which a discharge should be effectuated, it would be inconsistent to hold that an employer, on the basis of the implied covenant of good faith, is bound to a substantive limitation on the employer's right to discharge.

*Id.* We conclude that the facts of this case offer no compelling reason to alter our position.

Affirmed.

HALL, C.J., and DURHAM and ZIMMERMAN, JJ., concur.

STEWART, J., concurs in the result.