**Joe D. TREMBLY, Plaintiff
and Appellant,**

v.

**MRS. FIELDS COOKIES, Defendant
and Appellee.**

No. 930635–CA.

Court of Appeals of Utah.

Nov. 10, 1994.

Russell C. Fericks (Argued), Nathan R. Hyde, Gerald J. Lallatin, Richards, Brandt, Miller & Nelson, Salt Lake City, for appellant.

Randall N. Skanchy, Deno G. Himonas (Argued), Jones, Waldo, Holbrook & McDonough, Salt Lake City, for appellee.

Before BENCH, DAVIS and ORME, JJ.

## OPINION

DAVIS, Judge:

Plaintiff Joe D. Trembly appeals the trial court's consideration of defendant Mrs. Fields Cookies's (Mrs. Fields) motion for relief from an earlier denial of Mrs. Fields's motion for summary judgment. The trial court granted the motion and, pursuant to the relief requested, granted summary judgment in favor of Mrs. Fields, concluding that the undisputed facts established as a matter of law that Trembly was an at-will employee of Mrs. Fields. We affirm.

## FACTS

Trembly was employed with Mrs. Fields in both staff and managerial positions from November 26, 1986 until his termination on March 13, 1990. When Trembly applied for

a position with Mrs. Fields, he signed an application for employment, at the top of which was the declaration that "[a]ll employees of [Mrs. Fields] are 'at-will' employees subject to termination at anytime [sic] with or without cause." Immediately above Trembly's signature on the application is the statement "I [Trembly] understand and agree that my employment is for no definite period and may ... be terminated at any time without any previous notice."

Several oral statements were made to Trembly concerning Mrs. Fields's disciplinary and termination policies. During Trembly's initial interview with Mitchell Dorin, Mrs. Fields's Regional Director of Operations, Dorin informed Trembly that he (Trembly) would be allowed "X amount of mistakes" and that certain stages of discipline would be followed before he would be "disciplined" (terminated). Later in Trembly's employment with Mrs. Fields, Cindy Reisner, Mrs. Fields's Director of Personnel, told Trembly that, as district manager, he could not fire anyone at Mrs. Fields without just cause.

In training videos, Randy Fields, Mrs. Fields's Chairman, stated that Mrs. Fields treats its people fairly and that a Mrs. Fields employee "will not be terminated for things unless they've been ... completely investigated fairly." Randy Fields also said that "the values of the company were more important than the training manual and that first and foremost is fair treatment of employees." The training videos were intended for all employees.

During Trembly's tenure at Mrs. Fields, a policy and procedure manual was in place. The policy and procedure manual was replete with references to the at-will nature of each individual's employment status. In November 1989, an Employee Handbook (handbook) was distributed, which, by its terms, superseded all prior handbooks, manuals, policies and procedures issued by Mrs. Fields. The handbook was distributed after the oral statements were made to Trembly by Dorin

and Reisner, and after the Randy Fields's video was distributed.

The handbook provides:

This handbook is provided as a guide which you may use to familiarize yourself with [Mrs. Fields]. It is provided and is intended only as a helpful guide. It does not constitute, nor should it be construed to constitute an agreement or contract of employment, express or implied, or as a promise of treatment in any particular manner in any given situation. This handbook states only general [Mrs. Fields's] guidelines.

The handbook's disciplinary process includes the following reservation:

[Mrs. Fields] is an "at-will" employer which means that any and all team members are subject to termination at anytime [sic] with or without cause. Although we generally will follow a disciplinary process because we are an at-will employer,[1] [Mrs. Fields] reserves the right to terminate a team member immediately.

The handbook further states that Mrs. Fields will "generally follow[ ] a progressive discipline policy that involves four stages": a verbal discussion, a written statement outlining an employee's required performance, a written statement of consequences if an employee is not performing as required, and an execution of the consequences. The handbook then provides a list of "grounds for immediate termination." Immediately following this list is the declaration that "[Mrs. Fields] is an at-will employer," that the list provided should not be "construed as a promise of specific treatment in a given situation," and that "[Mrs. Fields] is free to terminate an employee's employment at any time with or without cause."

Trembly testified in his deposition that he had used this particular handbook for training a store manager and had specifically talked about the at-will language contained in the handbook. Trembly further testified that he understood that Mrs. Fields utilized an at-will employment policy and believed his

---

1. Although this statement arguably represents a misunderstanding of law, we believe the intent of the handbook is clear and that it is likely the comma was inadvertently placed after the word "employer" rather than after the word "process."

employment relationship with Mrs. Fields to be "at-will."

Mrs. Fields terminated Trembly on March 13, 1990. Trembly filed suit against Mrs. Fields, asserting five causes of action: (1) breach of implied-in-fact employment contract; (2) breach of written contract; (3) breach of covenant of good faith and fair dealing; (4) misrepresentation; and (5) intentional infliction of emotional distress. Trembly filed his complaint in the Third Judicial District Court in Summit County, which operates on a rotating trial judge calendar.

Mrs. Fields filed a motion to dismiss Trembly's third cause of action, which was granted by then-presiding Judge Frank G. Noel. Mrs. Fields subsequently filed a motion for summary judgment, seeking dismissal of Trembly's remaining causes of action. The trial court, through Judge Homer F. Wilkinson, granted summary judgment on Trembly's fourth and fifth causes of action, but denied summary judgment on Trembly's first and second claims.

Mrs. Fields filed a motion for reconsideration of Judge Wilkinson's denial of summary judgment with respect to Trembly's first and second causes of action. Judge Wilkinson partially granted the motion, dismissing count two of Trembly's complaint, but leaving intact Trembly's implied-in-fact employment contract claim. Mrs. Fields subsequently filed a motion for relief from that order, basing it upon the then recent Utah Supreme Court decisions *Sanderson v. First Sec. Leasing,* 844 P.2d 303 (Utah 1992), and *Hodgson v. Bunzl Utah, Inc.,* 844 P.2d 331 (Utah 1992). Judge David S. Young, who had rotated into the court replacing Judge Wilkinson, granted the motion for relief and rendered summary judgment in Mrs. Fields's favor on the grounds that the holdings in *Sanderson* and *Hodgson* and the undisputed facts established, as a matter of law, that Trembly's "employment relationship with [Mrs. Fields] was 'at-will.'"

Trembly appeals.

### ISSUES

This appeal raises three issues: (1) Whether Judge Young erred in entertaining Mrs. Fields's motion for relief; (2) whether Judge Young erred by granting the motion; and (3) whether the undisputed evidence creates a material issue of fact as to whether Trembly had an implied-in-fact employment contract providing he would be terminated only for cause and, accordingly, whether summary judgment was improper.

### ANALYSIS

■■■ Trembly claims that Judge Young erred in hearing Mrs. Fields's motion[2] because no new facts were presented and because entertaining the motion violated the "law of the case" doctrine. The decision to entertain a motion under Rule 54(b) is a question of law. "'We accord conclusions of law no particular deference, but review them for correctness.'" *Richins v. Delbert Chipman & Sons Co.,* 817 P.2d 382, 385 (Utah App.1991) (quoting *Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985)).

■■■ Rule 54(b) of the Utah Rules of Civil Procedure provides, in pertinent part, that

any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... is

**2.** Mrs. Fields brought its motion pursuant to Rule 60(b)(7) of the Utah Rules of Civil Procedure. However, by its terms, Rule 60(b)(7) applies only to motions for relief from a *final* judgment or order. Utah R.Civ.P. 60(b). *But see Rees v. Albertson's, Inc.,* 587 P.2d 130, 131–32 (Utah 1978) (suggesting in dicta that Rule 60(b)(7) is appropriate mechanism to request reconsideration of earlier denial of motion for summary judgment). In this case, Mrs. Fields was asking the court to reconsider the denial of a motion for summary judgment, which is not a final order or judgment. Thus, a motion under

Rule 60(b)(7) is not available. Rule 54(b) of the Utah Rules of Civil Procedure, however, allows a court to change its position with respect to any order or decision before a final judgment has been rendered in the case. *See Timm v. Dewsnup,* 851 P.2d 1178, 1184–85 (Utah 1993); *Salt Lake City Corp. v. James Constructors,* 761 P.2d 42, 44–45 (Utah App.1988). Because the substance, not caption, of a motion is dispositive in determining the character of the motion, *see State v. Parker,* 872 P.2d 1041, 1044 (Utah App. 1994), we will treat Mrs. Fields's motion as a Rule 54(b) motion.

subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

*Id.* Rule 54(b) allows "for the possibility of a judge changing his or her mind in cases involving multiple parties or multiple claims." *Salt Lake City Corp. v. James Constructors,* 761 P.2d 42, 44 (Utah App.1988). Thus, a motion under Rule 54(b) is a proper vehicle to ask the court to reconsider its prior denial of a motion for summary judgment. *Timm v. Dewsnup,* 851 P.2d 1178, 1184–85 (Utah 1993); *James Constructors,* 761 P.2d at 44 & n. 5.

■ A court can consider several factors in determining the propriety of reconsidering a prior ruling. These may include, but are not limited to, when (1) the matter is presented in a "different light" or under "different circumstances;" (2) there has been a change in the governing law; (3) a party offers new evidence; (4) "manifest injustice" will result if the court does not reconsider the prior ruling; (5) a court needs to correct its own errors; or (6) an issue was inadequately briefed when first contemplated by the court. *State v. O'Neil,* 848 P.2d 694, 697 n. 2 (Utah App.), *cert. denied,* 859 P.2d 585 (Utah 1993).

■ Mrs. Fields based its motion on *Sanderson v. First Sec. Leasing,* 844 P.2d 303 (Utah 1992), and *Hodgson v. Bunzl Utah, Inc.,* 844 P.2d 331 (Utah 1992), which the supreme court decided *after* Judge Wilkinson denied Mrs. Fields's motion for summary judgment on Trembly's implied-in-fact contract claim. Mrs. Fields apparently believed that these decisions presented the case at bar in a different light because of the factual similarities,[3] and because the Utah Supreme Court in *Hodgson* held that the plaintiff had not presented sufficient evidence to withstand summary judgment. Judge Young agreed, stating that "if this were my case and I had handled it throughout, I would have called it back with the additional cases [*Sanderson* and *Hodgson* ] and would have ruled consistent with what I have now done." Judge Young therefore relied on proper grounds for reconsidering the ruling previously made by Judge Wilkinson.

■ Trembly's next contention of error is that the trial court heard Mrs. Fields's motion in violation of the "law of the case" doctrine, which provides that "one district court judge cannot overrule another district court judge of equal authority." *Mascaro v. Davis,* 741 P.2d 938, 946 (Utah 1987). This doctrine has "evolved to avoid the delays and difficulties that arise when one judge is presented with an issue identical to one which has already been passed upon by a coordinate judge in the same case." *Id.* at 947 (footnote omitted). Notwithstanding the law of the case doctrine, " 'a trial court is not inexorably bound by its own precedents.' " *James Constructors,* 761 P.2d at 45 (quotation omitted). "[T]he law of the case doctrine does not prohibit a judge from catching a mistake and fixing it." *Gillmor v. Wright,* 850 P.2d 431, 439 (Utah 1993) (Orme, J., concurring). Moreover, a judge is free to change a ruling until a final decision is formally rendered. Utah R.Civ.P. 54(b); *Ron Shepherd Ins. v. Shields,* 882 P.2d 650, 652–54 (Utah 1994); *McKee v. Williams,* 741 P.2d 978, 981 (Utah App.1987); *cf. Richardson v. Grand Central Corp.,* 572 P.2d 395, 397 (Utah 1977) ("[G]enerally preliminary or interim rulings do not rise to the dignity of res judicata or stare decisis."). In this case, the denial of the motion for summary judgment was not a final order. Thus, the law of the case doctrine did not preclude Judge Young from revisiting Judge Wilkinson's prior ruling.[4]

---

**3.** The plaintiff in *Hodgson* also relied on statements made to her by her supervisor in a preemployment interview and the disciplinary treatment of other employees to support her implied-in-fact contract claim.

**4.** The fact that Judge Young replaced Judge Wilkinson is of no significance. A single judge is entitled to correct any interim order previously made, and even though a location within a judicial district is on a rotating judge calendar, the authority of the judge who actually decides the case on the merits to correct a previously entered order is undiminished. On a rotating calendar, "[i]n a sense, the two judges, while different persons, constitute a single judicial office for law of the case purposes." *Gillmor v. Wright,* 850 P.2d 431, 439–40 (Utah 1993) (Orme, J., concurring).

Because we hold that the trial court did not err in entertaining Mrs. Fields's motion, we must next determine whether the trial court properly granted the motion. It is within the sound discretion of the trial court to grant a motion under Rule 54(b), and the decision to do so will not be disturbed on appeal absent an abuse of this discretion. *State v. Smith,* 781 P.2d 879, 882 n. 4 (Utah App.1989).

After reviewing the record and the holdings in *Sanderson* and *Hodgson,* we cannot say that Judge Young abused his discretion by granting Mrs. Fields's motion for relief. Judge Young based his decision on *Sanderson* and *Hodgson,* which were decided *after* Judge Wilkinson denied summary judgment on Trembly's implied-in-fact contract claim. *Sanderson* considered issues similar to those raised in the case at bar; the facts in *Hodgson* are analogous to the facts in this case,[5] with the Utah Supreme Court holding that the plaintiff's evidence was insufficient to survive summary judgment. On this basis, Mrs. Fields's motion under Rule 54(b) justified relief, and we decline to reverse Judge Young's decision to grant the motion.

We now address the last issue raised by Trembly: whether the trial court erred in granting summary judgment in favor of Mrs. Fields. "Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Sanderson,* 844 P.2d at 306. Whether summary judgment was appropriate is a question of law and we grant no deference to the trial court's decision, but review it for correctness. *Richins,* 817 P.2d at 385. When reviewing a grant of summary judgment, we liberally construe all inferences that may be reasonably drawn from the facts in favor of the nonmoving party. *Johnson v. Morton Thiokol, Inc.,* 818 P.2d 997, 1000 (Utah 1991). Although the existence of an implied-in-fact employment contract is normally a question of fact left to the discretion of the jury, "the court retains the power to decide whether, as a matter of law, a reasonable jury could find that an implied contract exists." *Sanderson,*

844 P.2d at 306. "If a reasonable jury cannot find that an implied contract exists, summary judgment is appropriate." *Id.* (citations omitted).

Thus, we must determine whether there is a dispute of material fact as to whether Trembly had an implied-in-fact employment contract with Mrs. Fields where Trembly would be terminated only after certain disciplinary procedures were followed. Trembly claims that the verbal assertions made to him and language contained in the company policy and procedures manual created an implied-in-fact employment contract where he could be terminated only after certain disciplinary procedures were followed, even though the subsequent handbook contained disclaimers dismissing any possibility of a contract of employment other than at-will.

In *Johnson,* the supreme court stated that in order for an

> implied-in-fact contract term to exist, it must meet the requirements for an offer of a unilateral contract. There must be a manifestation of the employer's intent that is communicated to the employee and sufficiently definite to operate as a contract provision [so that] the employee can reasonably believe that the employer is making an offer of employment other than employment at will.

*Johnson,* 818 P.2d at 1002 (footnote omitted). While it is clear that evidence of oral statements standing alone may establish an implied-in-fact contract, *Hodgson,* 844 P.2d at 334, such evidence "must be sufficient to fulfill the requirements of a unilateral offer." *Johnson,* 818 P.2d at 1002.

Trembly claims that the statements made to him by Mitchell Dorin are sufficiently definite to operate as a "contract provision." However, even if we agree with Trembly, if an employee has knowledge of a distributed handbook that changes a condition of the employee's employment, and the employee remains in the company's employ, the modified conditions become part of the employee's employment contract. *Id.; see also Sorenson v. Kennecott–Utah Copper*

5. *See* discussion, footnote 2.

*Corp.*, 873 P.2d 1141, 1148 (Utah App.1994) (earlier version of company's code of conduct arguably modifying employee's at-will status was expressly superseded by later version). Further,

> "[i]n this manner, an original employment contract may be modified or replaced by a subsequent unilateral contract. The employee's retention of employment constitutes acceptance of the offer of a unilateral contract; by continuing to stay on the job, although free to leave, the employment supplies the necessary consideration for the offer."

*Johnson*, 818 P.2d at 1002 (quoting *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn.1983)). Thus, even if Dorin's oral assertions to Trembly modified his at-will status with Mrs. Fields, the handbook clearly superseded and replaced that agreement. In the handbook, Mrs. Fields unequivocally reserved its at-will employer status and the right to terminate an employee at any time with or without cause. Trembly testified that he was familiar with this at-will language. Therefore, Trembly could not have reasonably concluded, after distribution of the handbook, that his employment was other than at-will on the basis of Dorin's statements. Mrs. Fields eliminated any confusion regarding employment status by the clear and conspicuous disclaimers contained in the handbook, which was distributed *after* Dorin made his comments to Trembly. Trembly retained his employment with Mrs. Fields with full knowledge of the modified condition of his employment and his retention constituted his acceptance of Mrs. Fields's offer: to remain employed at Mrs. Fields as an at-will employee.

■ Trembly's reliance on oral statements made by Randy Fields and Cindy Reisner is also misplaced. Trembly claims that Randy Fields's statements to employees in company videos regarding fairness modified Trembly's at-will employment status to one where he could be terminated only for cause. Not only does this argument fail because Trembly saw the video before the handbook was distributed, but also because general statements of fairness made to all company employees through a training video

are not sufficiently definite to operate as a contract provision and are not of such a nature that Trembly could reasonably believe that Mrs. Fields intended to make *him* an offer of employment other than at-will. *See Johnson*, 818 P.2d at 1002.

■ Reisner informed Trembly that he could not terminate any Mrs. Fields's employee without just cause and, based on this assertion, Trembly claims his at-will status was modified. As with the statements made by Dorin and Randy Fields, Reisner's disclosure was made before the handbook was distributed and was, therefore, of no consequence to Trembly. Further, simply being informed that other employees could not be terminated without just cause does not necessarily grant the same right to Trembly. *Sorenson*, 873 P.2d at 1148; *accord Kirberg v. West One Bank*, 872 P.2d 39, 42 (Utah App.1994). Trembly is required to "point to affirmative and definite acts of [Mrs. Fields] demonstrating [Mrs. Fields's] intent to modify its at-will contract with [Trembly]." *Kirberg*, 872 P.2d at 42. This he is unable to do.

Lastly, Trembly relies on language in the policy and procedure manual to support his claim that he could be terminated only after Mrs. Fields followed certain disciplinary procedures. However, the policy and procedures manual was superseded by the handbook, which stated "[t]his handbook supersedes all prior handbooks, manuals, policies and procedures issued by the Company." Thus, we reject Trembly's reliance on this manual.

## CONCLUSION

Judge Young properly heard Mrs. Fields's motion for relief brought pursuant to Rule 54(b), and did not abuse his discretion in granting that motion. Summary judgment was correct because, as a matter of law, even if Trembly's initial employment contract provided that he would be terminated only after Mrs. Fields followed certain disciplinary procedures, this employment status was later modified by the handbook, which provided that Trembly was an at-will employee. Trembly accepted this contract provision by

remaining in Mrs. Fields's employ after he had knowledge of the company's at-will employment policy. Accordingly, we affirm.

BENCH and ORME, JJ., concur.