**David Scott JOHNSON, Plaintiff,**

v.

**KIMBERLY CLARK WORLDWIDE, INC., Defendant.**

**No. 98-CV-139 G.**

United States District Court,
D. Utah,
Northern Division.

Feb. 16, 2000.

Jeffrey Robinson, Salt Lake City, UT.

Lois A. Baar, Parsons Behle & Latimer, Salt Lake City, UT.

Douglas A. Barritt, Payne & Fears, Irvine, CA.

## MEMORANDUM DECISION AND ORDER

GREENE, District Judge.

This matter is before the court on Defendant Kimberly-Clark Corporation's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment. The parties have filed memoranda, affidavits, and other documents in support of and in opposition to defendant's motion. The Court heard oral argument on January 16, 1999, and took the matter under advisement.

Now, being fully advised, the Court enters its Memorandum Decision and Order.

Defendant's evidentiary objections to the Affidavit of David S. Johnson are overruled. Plaintiff voluntarily has withdrawn his third cause of action—termination in violation of public policy—and that claim is dismissed with prejudice.

Plaintiff's first and second causes of action—claims for breach of contract and for breach of the implied covenant of good faith and fair dealing—are not ripe for summary judgment because of disputed issues of material fact.

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate *only* when "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Kaul v. Stephan,* 83 F.3d 1208, 1212 (10th Cir.1996) (quoting *Wolf v. Prudential Ins.* *Co. of America,* 50 F.3d 793, 796 (10th Cir.1995)). The Court must "'examine the fact[s] and any reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment.'" *Id.* Moreover, the "nonmovant is generally 'given wide berth to prove a factual controversy exists.'" *Woodman v. Runyon,* 132 F.3d 1330, 1337 (10th Cir. 1997) (quoting *Ulissey v. Shvartsman,* 61 F.3d 805, 808 (10th Cir.1995)). Thus, "the relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Bingaman v. Kansas City Power & Light Co.,* 1 F.3d 976, 980 (10th Cir.1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## I. DEFENDANT'S CLAIM FOR BREACH OF IMPLIED-IN-FACT CONTRACT

Defendant urges dismissal of plaintiff's breach of contract claim on three grounds: *first,* that plaintiff cannot satisfy his burden of introducing evidence of an implied-in-fact contract sufficient to overcome Utah's at-will presumption; *second,* that the at-will disclaimer contained in its Personnel Guidelines effectively precludes the existence of an implied-in-fact contract; *third,* that even if plaintiff could establish an implied employment contract whereby defendant promised to terminate plaintiff only for cause, plaintiff's claim fails because defendant had good cause and did in fact terminate him for cause. These contentions will be considered seriatim.

### A. Evidence of Implied-In-Fact Contract

■ Under Utah law there is a presumption that "an employee hired for an indefinite period is . . . an employee at will . . . ." *Johnson v. Morton Thiokol, Inc.,* 818 P.2d 997, 1000 (Utah 1991). This "arrangement allows either the employer or the employee to terminate the employment for any reason, or no reason at all, at any time; . . . [and] the employer may 'do so without extending any procedural safe-

guard to an employee, except as required by law.'" *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 400 (Utah 1998) (quoting *Fox v. MCI Communications Corp.*, 931 P.2d 857, 859 (Utah 1997)). However, "[a] plaintiff/employee may overcome this presumption by showing that the parties created an implied-in-fact contract, modifying the employee's at-will status." *Hodgson v. Bunzl Utah, Inc.*, 844 P.2d 331, 333 (Utah 1992).

"[E]vidence of conduct and oral statements may establish an implied-in-fact contract even without the support of written policies, bulletins, or handbooks." *Hodgson*, 844 P.2d at 334. However, the evidence offered to establish such a contract "must be sufficient to fulfill the requirements of a unilateral offer." *Johnson*, 818 P.2d at 1002. This means that "[t]he employer must communicate the intent to offer employment other than at will, the communication must be sufficiently definite to act as a contract provision, and the communicated intent must be such that the employee may reasonably believe that the employment offered is other than at-will." *Hodgson*, 844 P.2d at 334.[1]

■ Because "[t]he existence of such [an implied-in-fact] agreement is a question of fact which turns on the objective manifestations of the parties' intent," it is "primarily a jury question." *Johnson*, 818 P.2d at 1001. Thus, summary judgment is appropriate only if "the evidence presented is such that no reasonable jury could [find an implied contract] limit[ing] the

employer's right to terminate the employee." *Id.* In this case, unless the At-Will Disclaimer controls or the undisputed facts show that plaintiff was terminated for cause, the existence or non-existence of a contract implied-in-fact must be left for the jury to determine. Plaintiff has produced sufficient evidence to raise a disputed issue of fact as to whether defendant, by the statements of agents with apparent authority and by its conduct and course of dealing with its employees, communicated to plaintiff an intent to offer him employment other than at-will.

## B. Effect of the At-Will Disclaimer

■ Under Utah law the employment relationship, at least where there is no express employment contract, generally is considered to be an unilateral contract, in that the employer offers employment under certain terms and the employee accepts by performing. *See Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1001 (Utah 1991). Thus, Utah courts have reasoned that the employer may change the nature and terms of the employment unilaterally.

■ In *Trembly v. Mrs. Fields Cookies*, the Utah Court of Appeals discussed how an existing employment contract can be modified or replaced by a *subsequent unilateral contract* which the employer offers by communicating the modified terms of employment and which the employee accepts by continuing performance. 884 P.2d 1306, 1313 (Utah App.1994).[2] However, the

---

1. Following this reasoning, the Utah Court of Appeals has noted that "general assurances of an ongoing working relationship are not sufficiently definite so as to rebut the at-will presumption," *Evans v. GTE Health Sys. Inc.*, 857 P.2d 974, 977 (Utah App.1993), and that "general statements of fairness made to all company employees through a training video are not sufficiently definite to operate as a contract provision," *Trembly v. Mrs. Fields Cookies*, 884 P.2d 1306, 1313 (Utah App. 1994). The Utah Court of Appeals has also noted that an employee who "relies solely on 'her understanding' and 'what she was taught.' ... [and] does not point to affirmative and definite acts of [the employer] demonstrating [the employer]'s intent to modify its at-will contract with her," has not raised a

jury question at to the existence of an implied-in-fact contract. *Kirberg v. West One Bank,* 872 P.2d 39, 42 (Utah App.1994).

2. While some jurisdictions question an employer's right to modify an employment contract unilaterally and require some additional consideration beyond continued employment, *see, e.g., Demasse v. ITT Corp.,* 194 Ariz. 500, 984 P.2d 1138,1144-47 (1999) (reasoning that implied-in-fact exception to at-will doctrine would be meaningless if employers were allowed to modify implied-in-fact employment contract unilaterally); *Brodie v. General Chem. Corp.,* 112 F.3d 440, 443 (10th Cir.1997) (same), Utah apparently still adheres to the rule that the employer can unilaterally modify an implied-in-fact contract without offering

court noted that for the modification to be effective (for the employee's continued performance to be considered assent to the modified contract) the employer must effectively communicate the modification or the new terms to the employee: *"if an employee has knowledge* of a distributed handbook that changes a condition of the employee's employment, and the employee remains in the company's employ, the modified conditions become part of the employee's employment contract." *Id.* At 1312-13 (emphasis added). Similarly, the Utah Supreme Court has reasoned:

> [W]hen an employee admittedly has *knowledge of* a distributed handbook's *provision that modifies the employment contract* and continues to work for the employer after gaining such knowledge, the modified contract prevails, and previous, contradictory conditions have no effect.

*Ryan v. Dan's Food Stores, Inc.,* 972 P.2d 395, 401 (Utah 1998) (emphasis added).

■ Whether plaintiff had knowledge of the disclaimer as it applied to his employment is unclear, and must be determined by the fact finder. In this case, plaintiff has introduced facts which raise a jury question as to whether defendant effectively communicated to plaintiff that his employment was terminable at will.[3]

In any event, the disclaimer would not necessarily be dispositive even if the plaintiff were found to have had knowledge of the at-will disclaimer promulgated by defendant in November, 1991. Indeed, an implied-in-fact contract can be established by evidence of *subsequent* conduct and oral statements even where the employer has promulgated an at-will disclaimer and effectively communicated it to the employee. *See Hodgson v. Bunzl Utah, Inc.,* 844 P.2d 331, 334 (Utah 1992) (holding that "conduct and oral statements [may] establish an implied-in-fact contract" so long as the evidence is "strong enough to overcome the presumption of at-will employment and any inconsistent written policies and disclaimers").[4]

### C. Termination for Cause

■ Plaintiff has produced sufficient evidence to preclude summary judgment on the question of whether he was properly terminated for cause. There is a triable issue of fact as to whether plaintiff's conduct, in reaching his hand underneath and behind an interlocked guard to pull slack out of the ear material, constituted cause for dismissal and also whether the reasons advanced by defendant as justification for terminating plaintiff-the purported pattern of "horseplay" and safety violations-were pretextual.

## II DEFENDANT'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

"[E]very contract is subject to an implied covenant of good faith" even "an indefinite-term, at-will employment contract." *Brehany v. Nordstrom, Inc.,* 812 P.2d 49, 55 (Utah 1991). The Utah Supreme Court has explained:

> Under the covenant of good faith and fair dealing, each party impliedly promises that he will not intentionally or purposely do anything which will destroy or

---

any consideration to the employee beyond continued employment and without any manifestation of consent by the employee beyond continued performance. *See Ryan,* 972 P.2d at 401 (adopting the reasoning of the court of appeals in *Trembly*).

**3.** Plaintiff testified, by affidavit and during his deposition, that he had no actual knowledge of the written disclaimer until well after his termination, that he was never given a copy of the Personnel Guidelines in which the disclaimer appeared, that nobody ever directed

his attention to the disclaimer, and that he was never told by Defendant or any of its agents that his employment was at-will.

**4.** *Kirberg v. West One Bank,* 872 P.2d 39, 41 (Utah App.1994) ( holding that "disclaimers can later be modified by expressed or implied agreement"); *Johnson,* 818 P.2d at 1004 (noting that "expressed or implied agreements [subsequent to distribution of the disclaimer] could have modified the at-will employment relationship").

injure the other party's right to receive the fruits of the contract.

\*   \*   \*   \*   \*   \*

To comply with his obligation to perform a contract in good faith, a party's actions must be consistent with the agreed common purpose and the justified expectations of the other party.

*St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199-200 (Utah 1991). Therefore, "when a party has been granted discretion under a contract, that discretion may not be exercised capriciously or in bad faith." *Olympus Hills Shopping Center, Ltd. v. Smith's Food & Drug Centers, Inc.*, 889 P.2d 445, 456 (Utah App. 1994). However, the Supreme Court of Utah has expressly rejected the proposition that "an employer, on the basis of the implied covenant of good faith, is bound to a substantive limitation on the employer's right to discharge." *Brehany*, 812 P.2d at 55. *See also Fox v. MCI Communications Corp.*, 931 P.2d 857, 859 n. 3 (Utah 1997) ("expressly reject[ing] th[e] proposition" that the implied covenant of good faith and fair dealing imposes "an additional restriction on the right of employers to terminate at-will employees").[5]

■ Since this court has denied summary judgment and determined that a question of fact exists as to whether an implied-in-fact contract came into being, plaintiff's claim for breach of the implied covenant of good faith and fair dealing would be viable if a fact finder found such an implied-in-fact contract to exist. However, even in the absence of such finding, the cause of action could still survive because the implied covenant of good faith and fair dealing inheres in an at-will employment contract just as it does in all contracts. *See Brehany*, 812 P.2d at 55; *Cook v. Zions First Nat'l Bank*, 919 P.2d 56, 60 (Utah App.), *cert. denied*, 925 P.2d 963 (Utah 1996).[6]

**5.** Utah's appellate courts have not ruled out the possibility that there may be facts and circumstances under which an at-will employee might have a claim for breach of the implied covenant of good faith and fair dealing. Indeed, the Utah Court of Appeals remarked that "[n]o Utah case has 'held that there is not an implied covenant of good faith and fair dealing in either at-will or other sorts of employment contracts.'" *Cook v. Zions First Nat'l Bank*, 919 P.2d 56, 60 (Utah App.) (rejecting an employer/defendant's argument that Utah law does not recognize the implied covenant of good faith and fair dealing in the employment context) (quoting *Dubois v. Grand Central*, 872 P.2d 1073, 1078 (Utah App.1994)), *cert. denied*, 925 P.2d 963 (Utah 1996). The Utah Court of Appeals has also held that "[w]hile th[e] implied covenant cannot establish new independent rights or duties not agreed upon by the parties, it protects an employee from denial of rights under the contract, and from arbitrary termination." *Dubois v. Grand Central*, 872 P.2d at 1078-79. Of course the Utah Supreme Court will have the last word on this subject. So far, that court has simply recognized that an implied covenant "cannot be used to alter rights agreed to by the parties," *Hodgson v. Bunzl Utah, Inc.*, 844 P.2d 331, 335 (Utah 1992), leaving the door open for its application to at-will employment in a proper case.

The Tenth Circuit, applying Wyoming law, recognized an enforceable duty even in at-will contracts not to terminate for an improper purpose, such as to avoid payment of benefits already earned. *McIlravy v. Kerr-McGee Corp.*, 119 F.3d 876, 882 (10th Cir.1997). This is consistent with the Utah Court of Appeals' characterization of the implied covenant of good faith and fair dealing:

> "[g]ood faith limits the exercise of discretion in performance conferred on one party by the contract." Steven J. Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith*, 94 Harv.L.Rev. 369, 372-73 (1980). "[A] party may deprive the other of these anticipated benefits for a legitimate (or good faith) reason. The same act will be a breach of the contract if undertaken for an illegitimate (or bad faith) reason." *Id.* at 373.

*Brown v. Weis*, 871 P.2d 552, 564 n. 18 (Utah App.1994).

**6.** However, as previously noted, the implied covenant of good faith and fair dealing "cannot be construed 'to establish new, independent rights or duties not agreed upon by the parties.'" *Heslop v. Bank of Utah*, 839 P.2d 828, 840 (Utah 1992) (quoting *Brehany*, 812 P.2d at 55). Therefore, the implied covenant of good faith "cannot change an 'indefinite-term, at-will employment contract into a contract that requires an employer to have good cause to justify a discharge.'" *Heslop*, 839 P.2d at 840 (quoting *Brehany*, 812 P.2d at 55). This is simply the logical application of the

In this case, depending on facts and circumstances presented at trial, it appears that plaintiff's claim for breach of the implied covenant of good faith and fair dealing may properly be presented to a jury. *See Cook,* 919 P.2d at 60-61 (noting that "'good faith and fair dealing are fact sensitive concepts, and whether there has been a breach of good faith and fair dealing is a factual issue, generally inappropriate for decision as a matter of law'"). Final determination of that matter will have to await trial, and summary judgment as to that claim is denied at this time.

## CONCLUSION

The evidentiary objections to the Affidavit of David S. Johnson are overruled. Plaintiff's third cause of action, a claim for termination in violation of public policy, is dismissed with prejudice because Plaintiff responded to Defendant's arguments for summary judgment on that claim by voluntarily withdrawing it. Plaintiff's motion for summary judgment is denied as to Plaintiff's first and second causes of action, claims for breach of contract and breach of the implied covenant of good faith and fair dealing, because the Plaintiff has raised disputed issues of fact which preclude summary judgment thereon.

IT IS SO ORDERED.

general rule that "[a]n express agreement or covenant relating to a specific contract right excludes the possibility of an implied covenant of a different or contradictory nature." *Rio Algom Corp. v. Jimco Ltd.,* 618 P.2d 497, 505 (Utah 1980).